UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| KEVIN D. MILLER and<br>JAMILA D. MILLER,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF PLYMOUTH, MARSHALL<br>COUNTY SHERIFF'S DEPARTMENT,<br>JOHN WEIR, individually and in his<br>official capacity as an employee or agent<br>of the City of Plymouth and/or the<br>Plymouth Police Department, NICHOLAS<br>LAFFOON, individually and in his<br>official capacity as an employee or agent<br>of Marshall County and/or the Marshall<br>County Sheriff's Department; and<br>BRUCE CARTER, individually and in his<br>official capacity as an employee or agent<br>of Marshall County and/or the Marshall<br>County Sheriff's Department<br><br>    Defendants. | CASE NO. 2:09-CV-205 JVB |

**OPINION AND ORDER**

On May 14, 2008, the defendant police officers conducted a traffic stop on plaintiffs Kevin D. Miller and his wife, Jamila D. Miller. After the stop and subsequent search of the Millers and their car turned up no evidence of contraband, the Millers filed this suit pursuant to 42 U.S.C. §1983 alleging that their First, Fourth, and Fourteenth Amendment rights were violated by the defendants (Counts I, II, and III). In addition, they bring a claim against the City and the County defendants alleging that they failed to adequately train or supervise the officers involved in the traffic stop. (Counts IV, V, VI). Finally there are pendent state law claims

1

against all the defendants for false imprisonment (Count VII), intrusion upon seclusion (Count VIII), assault and battery (Count IX), intentional infliction of emotional distress (Counts X, and XI), and negligent infliction of emotional distress (Count XII).

Presently before the court are Defendants' John Weir and the City of Plymouth's Motion to Dismiss [DE 23]. In addition, the Plaintiffs filed a Motion to Strike or in the alternative, a Request to File a Sur-Reply instanter [DE 42]. For the following reasons, the Motion to Strike will be DENIED and the request to file the sur-reply instanter will be GRANTED.[1] The Motion to Dismiss will be DENIED.

**A. Factual Background**

The facts set out in the Complaint and accepted as true for purposes of the motion to dismiss are as follows: On May 18, 2008, the Millers, who are African Americans, were driving in their car from Gary, Indiana, to Fort Wayne, Indiana, on U.S. 30. At 11:45 p.m. the Millers were stopped at a traffic light at the intersection of U.S. 30 and Oak Road in Plymouth, Indiana. Defendant Officer Weir of the Plymouth Police Department was parked on the shoulder of the intersection in a marked squad car facing eastbound on U.S. 30. His car was located on the same side of the intersection as the Millers. Officer Weir is a canine officer and had his dog in the car.

While the Millers were at the intersection, Marshall County Sheriff Deputy Laffoon pulled up behind the Millers in a marked squad car. Mr. Miller had seen through his rearview

---

[1]After the Defendants filed their Reply brief to their Motion to Dismiss, Plaintiffs filed a Motion to Strike the Reply [DE 42] alleging that the Defendants raised new issues for the first time in their filing. Alternatively, the Plaintiffs sought leave to file a Sur-Reply instanter to respond to the new issues. After reviewing the filings and assessing their helpfulness to the court in resolving the present motion, the court concludes that the Motion to Strike is DENIED and the Request to File a Sur-Reply instanter is GRANTED.

mirror that Deputy Laffoon had turned onto the eastbound lane of U.S. 30 less than a mile from the intersection. (Complaint, ¶13).

After the traffic signal turned green, the Millers proceeded through the intersection followed by Laffoon and Weir (*Id.* at 15). Deputy Laffoon then activated his emergency lights and the Millers pulled their car onto the shoulder of U.S. 30 and turned off the engine. Laffoon and Weir got out of their cars and approached the Millers' car. Both officers were in full uniform and armed.

Laffoon told Mr. Miller that he stopped them for speeding. (Complaint, at ¶17). Laffoon said that Mr. Miller had been traveling at 75 mph in the 60 mph zone. Mr. Miller, however, believed that the stop was a pretext for a rolling drug checkpoint. (*Id.* at 18). Mr. Miller avers that he had not been speeding, that Laffoon was coming from the opposite direction of Mr. Miller and had not been following him, and the alleged speeding occurred three miles from the location of the stop. Regardless, Mr. Miller surrendered his driver's license and vehicle registration and requested to see the radar display showing his speed. Laffoon and Weir then conferred and returned to their cars. (*Id.* at ¶19).

Shortly thereafter, Weir returned with his police dog and walked it around the Millers' car. Weir approached the driver's door with the dog tethered on a leash and ordered Mr. Miller from the car. (Complaint at ¶20). Mr. Miller got out but was apprehensive of the dog. Officer Weir permitted the dog to approach and sniff Mr. Miller while Mr. Miller was "sandwiched" between the dog and his vehicle. (Id. at ¶21). As Mr. Miller attempted to shield himself from the dog, Weir instructed him not to move because the dog "will bite your ass." (*Id.*). Mr. Miller was then instructed to stand at a location about ten feet behind the Millers' car. (*Id.* at 23).

Weir then opened the front driver's side door of the Millers' vehicle and prompted the dog to enter the vehicle. Mrs. Miller was still in the vehicle in the front passenger's seat and became afraid of the dog. Both Millers repeatedly objected to Weir regarding the search and his use of the dog. (Complaint at ¶24). When Weir did not cease, Mr. Miller objected to Laffoon. At that point, Weir approached Mr. Miller from behind and forcibly handcuffed him. Mr. Miller asked if he was under arrest and Weir responded that he was being "detained." (*Id.* at 26). While this was ongoing, Mrs. Miller remained in the car. After Weir handcuffed Mr. Miller, three additional uniformed and armed law enforcement officers arrived on the scene, including Defendant Officer Carter.

Weir ordered Mrs. Miller to get out, grabbed her jacket by the lapel pulling it open and visually searched inside the jacket. Mrs. Miller was frightened, crying, and visibly shaken by what was transpiring. (Complaint, ¶29). Weir and Laffoon then searched the passenger and luggage compartments of the Millers' vehicle. They searched the Millers' luggage, briefcases, book bags, dirty laundry, and all other personal effects.

While this search was being conducted, Officer Carter stood alongside the Millers. Carter told Mr. Miller that he would remain handcuffed as long as he continued to verbally object to the search. (Complaint, ¶31). About 40-45 minutes after the traffic stop had been initiated, and after the search of the Millers' vehicle produced no illegal drugs, weapons, or contraband, Weir approached Mr. Miller, who was still handcuffed, and searched through his pants pockets. No illegal drugs, weapons, or other contraband were found on Mr. Millers' person. At some point, the Millers were released from their detention and permitted to proceed on their way.

Several days after the traffic stop, Mr. Miller returned to Plymouth to obtain copies of the police report associated with this incident. Mr. Miller was advised by both the City and the County that no incident report existed detailing these events.

**B. Discussion**

As noted, Defendants Weir and the City have moved to dismiss various allegations in the Complaint. With respect to the City, the defendants assert that the Millers' allegations fail to state a claim for relief under *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 98 (1978), for failure to train or supervise its employees. With respect to Weir, the Defendants assert that to the extent the Millers are attempting to sue him individually for state law violations, he is immune from suit individually under the Indiana Tort Claims Act ("ITCA").

It is well established that *pro se* complaints are to be liberally construed. *Haines v. Kerner,* 404 U.S. 519, 520 (1972); *see also McCormick v. City of Chi.,* 230 F.3d 319, 325 (7th Cir. 2000). In addition, when considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the Court takes the allegations in the complaint as true, viewing all facts-as well as any inferences reasonably drawn therefrom-in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.,* 205 F.3d 323, 326 (7th Cir.2000); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007) (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508, n. 1 (2002)). However, some factual allegations may be "so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claims." *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. Aug. 20, 2009) (quoting *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC,* 499 F.3d 663, 667 (7th Cir.2007)).

5

Federal Rule of Civil Procedure 8(a)(2) requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Rule 8 reflects a liberal notice pleading requirement that focuses the 'litigation on the merits of the claim' rather than some technicality that might keep a plaintiff out of court. *Brooks,* 578 F.3d at 580 (quoting *Swierkiewicz,* 534 U.S. at 514). Alleging specific facts is not required. *See Erickson v. Pardus,* 551 U.S. 89, 93 (2007). However, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic,* 550 U.S. at 555. The plaintiff's claim must be "plausible" in that there are "enough facts to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's allegations. *Bell Atlantic,* 550 U.S. at 556.

However, "a court need not accept as true 'legal conclusions[, or t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.' " *Brooks,* 578 F.3d at 581 (quoting *Ashcroft v. Iqbal,* ---U.S. ----, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Plaintiffs cannot "merely parrot the statutory language of the claims that they are pleading . . . rather than providing some specific facts to ground those legal claims." *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009). "[C]ourts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal arguments." *Id.* at 581. Mindful of these standards, the court turns now to the contentions in the Defendants' motion.

**(1) *Claims Against the City Under 42 U.S.C. §1983*[2]**

A municipality may be held liable under 42 U.S.C. § 1983 for a constitutional deprivation under *Monell v. Dep't of Social Servs.,* 436 U.S. 658 (1978). A plaintiff can plead a *Monell* claim by alleging the existence of one of the following situations: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Sims v. County of Bureau,* 506 F.3d 509 (7th Cir.2007). By pleading one of the above, a plaintiff "distinguish[es] acts of the *municipality* from acts of *employees* of the municipality, and thereby make[s] clear that municipal liability is limited to action for which the municipality is actually responsible." *Id. at* 515 (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986)). "Misbehaving employees are responsible for their own conduct; units of local government are responsible only for their policies rather than misconduct by their workers." *Id.* (quotations omitted).

That said, a plaintiff is not held to a heightened standard in pleading a *Monell* claim. *McCormick,* 230 F.3d at 323 (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163 (1993)). And here, although they are at times confusing, the Plaintiffs' allegations attempt to fit within the second method of establishing a *Monell* claim in that Plaintiffs allege that the City failed to adequately train and supervise its employees in

---

[2]To the extent that the Millers are also suing the individual defendants in their official capacities, such claims are redundant where, as here, the entity for which the individuals worked is itself named. *See Pourghoraishi v. Flying J, Inc.,* 449 F.3d 751, 765 (7th Cir.2006) ("When a plaintiff sues an individual officer in his official capacity, the suit is treated as if the plaintiff has sued the municipality itself.").

conducting traffic stops, using dogs in the field, and in keeping records of vehicle stops and the use of police dogs.

The Supreme Court has held that "the inadequacy of police training may serve as the basis for section 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police came into contact." *City of Canton v. Harris,* 489 U.S. 378, 388 (1989). At least two types of situations have been identified that would justify a conclusion of deliberate indifference in the failure to train police officers. *Brown v. Shaner,* 172 F.3d 927, 931 (6th Cir. 1999) (citing *City of Canton v. Harris,* 489 U.S. 378, 387 (1989). One is the failure to provide adequate training in light of foreseeable consequences that could result from the lack of instruction. *Id.* For example, a lack of instruction in the use of firearms or in the use of deadly force could constitute "deliberate indifference." *Id.* A second type of situation justifying a conclusion of deliberate indifference is where the city fails to act in response to repeated complaints of constitutional violations by its officers. *Id.*

Here, the plaintiffs, aside from setting out the allegations of the traffic stop, have asserted the following in their complaint:

> 44. ...Reasonable law enforcement officers, properly trained and/or supervised, would have known that it is violative of individuals' rights under the U.S. Constitution and Indiana Constitution to:
>
>   a. set up drug-interdiction checkpoints along thoroughfares;
>   b. conduct canine sniffs of motorists' vehicles unless the vehicles are lawfully detained;
>   c. search motorists' vehicles without (i) probable cause that the vehicles contain evidence of criminal wrongdoing, (ii) a lawful custodial arrest, or (iii) consent;
>   d. order motorists to yield to sniffs of their person under threat of dog bite;
>   e. prompt police dogs to enter the passenger compartments of vehicles while the vehicles are occupied by motorists and/or passengers;
>   f. read personal correspondence contained in motorists' vehicles during

     roadside vehicle drug searches;
  g. search the person of motorists absent consent or a lawful custodial arrest;
  h. retaliate against motorists for exercising constitutionally protected rights;
  i. engage in racially selective and racially discriminatory tactics during traffic stops;
  j. detain motorists beyond the time necessary to dispel suspicion of criminal activity;
  k. use or display unreasonably excessive force; and/or
  l. fail to intervene to stop other officers from violating citizens' constitutional rights.

45. The inadequacy of Weir's, Laffoon's and Carter's training was so obvious and so likely to lead to the deprivation of the constitutional rights of individuals with whom Weir, Laffoon, and Carter came into contact that Plymouth and [the County] were deliberately indifferent to the need for more or different training.

46. ....[the City and the County] have deficient departmental procedures for supervising their law enforcement officers: [the City and the County] do not require law enforcement officers in their employ to generate reports detailing all incidents of canine sniffs or deployments, vehicle searches, personal searches, or handcuffed detention of motorists...[W]ithout these incident reports, PPD and MCSD cannot effectively supervise its officers or recognize when changes in policy or training is needed. Essentially, Weir, Laffoon and Carter were allowed to run amok. PPD's and MCSD's failure to supervise Weir, Laffoon and Carter was so likely to lead to the deprivation of citizens' constitutional rights that [the City and the County] were deliberately indifferent to the rights and security of those individuals with whom Weir, Laffoon and Carter came into contact.

In response to these assertions, the City argues that the Plaintiffs are merely providing bare recitations of legal conclusions and do not establish sufficient facts to support a claim for inadequate training under *Monell.*

As noted earlier, the Supreme Court recently clarified the pleading standard under Rule 8(a). In *Twombly,* the Court held that to survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570). In *Iqbal,* the Court specifically extended this pleading standard to all civil actions and directed district courts

9

to undertake a two-step analysis when considering a motion to dismiss: (1) "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (2) "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id.* at 1950. While well-pleaded factual allegations in the complaint are treated as true for the purposes of a motion to dismiss, the Court reiterated, "we are not bound to accept as true a legal conclusion couched as a factual allegation" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949-50.

The Supreme Court's ruling in *Iqbal* has created some skepticism in the various circuits as to whether the Supreme Court's decisions in *Twombly* and *Iqbal* suggest a shift from notice-pleading back toward fact-pleading. *See Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009) (stating that *Twombly* and *Iqbal* arguably shifted pleading standards from simple notice pleading to a more heightened form of pleading). For its part, however, the Court of Appeals for the Seventh Circuit is proceeding cautiously and continues to emphasize that neither *Twombly* nor *Iqbal* have changed the fundamentals of pleading. *See, e.g., Bissessur v. Ind. Univ. Bd. of Trustees*, 581 F.3d 599 (7th Cir. 2009) ("Our system operates on a notice pleading standard; *Twombly* and its progeny do not change this fact.").[3]

---

[3]In *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009) the Court explained:
> We understand the Court in *Iqbal* to be admonishing those plaintiffs who merely parrot the statutory language of the claims that they are pleading (something that anyone could do, regardless of what may be prompting the lawsuit), rather than providing some specific facts to ground those legal claims, that they must do more. These are the plaintiffs who have not provided the "showing" required by Rule 8.

So, what do we take away from *Twombly, Erickson*, and *Iqbal*? First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that

In the context of section 1983 municipal liability, district courts in the Seventh Circuit post- *Twombly* and *Iqbal,* have continued to apply *Leatherman*'s holding that plaintiffs are not held to a heightened pleading requirement nor are they required to plead specific facts to prove the existence of a municipal policy. *Diaz v. Hart*, 2010 WL 849654 (N.D. Ill. March 8, 2010) (holding that conclusory allegations of a policy or practice can support a claim for municipal policy where plaintiff alleged in significant detail the underlying facts supporting the alleged infringement of his constitutional rights); *Riley v. County of Cook*, 2010 WL 376064, at *4 (N.D. Ill. Jan.27, 2010); *Jones v. Bremen High Sch. Dist.*, 2009 WL 537073, at *4 (N.D. Ill. Mar.4, 2009).

Although *Twombly* and *Iqbal* require more than boilerplate allegations, what remains clear is that Millers need only allege "enough facts to state a claim to relief that is plausible on its face." *Eckert v. City of Chi.*, 2009 WL 1409707, at *6 (N.D. Ill. May 20, 2009) (quoting *Iqbal*,129 S.Ct. at 1960). "[A]n official capacity claim can survive even with conclusory allegations that a policy or practice existed, so long as facts are pled that put the defendants on proper notice of the alleged wrongdoing." *Riley,* 2010 WL 376064, at *4 (citing *McCormick,* 230 F.3d at 325). The Millers have alleged facts related to the traffic stop which create a plausible claim for relief under the First, Fourth, and Fourteenth Amendments. They allege that they were wrongfully stopped by Weir and the other officers because of their race, subjected to searches by the officers, subjected to an illegal canine sweep of the car and their persons, handcuffed, and

---

they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.
*Id.*

11

detained for nearly an hour, all under false pretenses. In addition, they have alleged that the impetus for their claims is the inadequate training of the officers by the City (and County) as it relates to vehicle traffic stops and the use of police dogs in searches. Finally, they have set out the alleged policies they believe led to the inadequate training of the officers, i.e., the failure to require reports of officers regarding traffic stops and the deployment of canine searches, the failure to train regarding a proper search of a vehicle, etc. Even after *Twombly* and *Iqbal*, a plaintiff doesn't have to come forward with evidence to survive a motion to dismiss. Moreover, giving the Millers' the benefit of liberal pleading standards due to their *pro se* status, it appears that they have pled sufficient facts to assert a plausible claim under *Monell* and sufficient facts to put the City on notice of the claim. The Motion to Dismiss is, therefore, DENIED.

**(2)** *Individual State Law Claims Against Weir*

Next, Defendants seek to dismiss all the state law claims against Weir individually or alternatively, to dismiss all the state law claims against the City except for the claim of false imprisonment for which the City is not entitled to immunity under the Indiana Tort Claims Act ("ITCA").[4] Defendants contend that the ITCA shields Weir from liability for the Millers' state law claims of false imprisonment, intrusion upon seclusion, assault and/or battery, intentional infliction of emotional distress, and negligent infliction of emotional distress because the Millers have not alleged that Weir has acted outside the scope of his employment.

---

[4] The Defendants are not at all clear as to which counts they are seeking dismissal, as to which Defendants, or on which grounds. In the end, it matters little since the court holds that the Plaintiffs can plead inconsistent and alternative theories of recovery under the ITCA.

The ITCA (Ind. Code §§ 34-13-3-1 to 25) provides that governmental entities are subject to liability for torts committed by their agencies or employees unless one of the immunity provisions of the Act applies. *City of South Bend v. Dollahan,* 918 N.E.2d 343, 350 (Ind. Ct. App. 2009). The ITCA also limits the liability of government employees by providing that a lawsuit alleging that a government employee acted within the scope of his employment is barred against the employee personally. *See* Ind. Code § 34-13-3-5(b). In fact, a lawsuit against a government employee in his personal capacity must *specifically allege* that the employee acted outside of the scope of his employment or that the employee's act or omission was criminal, malicious, willful and wanton, or calculated to benefit the employee personally. *See* Ind. Code § 34-13-3-5(c).[5] Indeed, Indiana Code section 34-13-3-5(c) states in pertinent part:

> A lawsuit filed against an employee personally must allege that an act or omission of the employee that causes a loss is:
> (1) criminal;
> (2) clearly outside the scope of the employee's employment;
> (3) malicious;
> (4) willful and wanton; or
> (5) calculated to benefit the employee personally.
>
> The complaint must contain a reasonable factual basis supporting the allegations.

---

[5] Moreover, the ITCA provides that neither a governmental entity nor a government employee acting within the scope of his employment is liable if a loss results from the adoption and enforcement of a law, "unless the act of enforcement constitutes false arrest or false imprisonment." Ind. Code § 34-13-3-3(8). Indiana Courts have made clear that the ITCA goes so far as to protect officers from liability for both tortious and even criminal acts where the purpose of the employee's conduct was to further the employer's business. *See City of Anderson v. Weatherford,* 714 N.E.2d 181, 186 (Ind. Ct. App. 1999) (citing *Kemezy v. Peters,* 622 N.E.2d 1296, 1298 (Ind.1993)). Defendants in the present case, however, have specifically indicated that their motion to dismiss does not rely on this immunity provision. (Reply at 2: "These Defendants are not arguing that either the City or John Weir are entitled to the law enforcement immunity under the [ITCA]. They are instead arguing that the pleading in this case violates the provisions of the [ITCA].")

13

Ind.Code § 34-13-3-5(c). The purpose of the ITCA is to "'ensure that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment.'" *Smith v. Ind. Dep't of Corr.,* 871 N.E.2d 975, 986 (Ind. Ct. App. 2007) (quoting *Celebration Fireworks, Inc. v. Smith,* 727 N.E.2d 450, 452 (Ind. 2000)). When the employee's conduct is of the same general nature as that authorized or incidental to the conduct authorized, it is within the scope of employment. *Id.*

A review of the Complaint demonstrates that the Millers did, in fact, allege that Weir's behavior in the course of the traffic stop was criminal and that he acted in a malicious, willful and wanton manner, all of which is sufficient to permit individual state law claims against Weir. (Complaint ¶41: The officers' conduct was criminal . . . . Weir's conduct was particularly egregious. He behaved in a malicious and willful and wanton manner, not in the manner Kevin or Jamila would associate with one entrusted with a badge, gun, an aggressive animal, and the extraordinary authority to arrest and detain persons against their will."). However, the Millers' have also pled facts consistent with a conclusion that Weir's conduct occurred in furtherance of the law enforcement interests of his employer. Indeed, the facts pled suggest that Weir was engaged in law enforcement duties for the City at the time the alleged torts occurred. Thus, in essence the Millers' have pled their case both ways, as the Federal Rules entitle them to do. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

Defendants, however, contend—without citation to any authority—that at the pleading stage "a Plaintiff is required to make a choice when suing a governmental employee" and

14

"Indiana law does not allow alternative pleading against a governmental employee in both his official and individual capacities." (Reply at 2). The Defendants are correct to the extent that they assert that under Indiana law the Plaintiffs cannot have it both ways; if Weir was acting within the scope of his employment the Plaintiffs cannot *prevail* on their state law claims against him individually since he would be entitled to immunity and, if Weir was acting outside the scope of his employment, the City cannot be held liable for his actions. Indeed, a party cannot *recover* separately on inconsistent theories when one theory precludes the other. *See Brookhaven Landscape & Grading Co. v. J.F. Barton Contracting Co.,* 676 F.2d 516, 523 (11th Cir. 1982). Yet, while Plaintiffs cannot, at the end of the day, recover on inconsistent claims, Plaintiffs may plead inconsistent claims, and such claims can be submitted to the jury to be sorted out. *Whitt v. E.I. DuPont de Nemours & Co.,* 461 F.2d 1152, 1154 (6th Cir. 1972) (stating that inconsistent theories of recovery may be submitted to the jury); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1283 (3d ed. 2004) ("[A] pleader [m]ay set forth inconsistent legal theories in his or her pleading and will not be forced to select a single theory on which to seek recovery against the defendant."). Accordingly, although Plaintiffs have asserted inconsistent claims in that they cannot simultaneously recover on their tort claims against both the City and Weir, this does not require the Court to find, as a matter of law, that one or the other of the claims is foreclosed at this stage of the proceedings. Therefore, the Motion to Dismiss the state law claims on this basis is DENIED.

## C. Conclusion

Based on the foregoing, the Defendants' Motion to Dismiss [DE 23] is DENIED. The Motion to Strike [DE 42] is DENIED but the alternative request to file the Sur-Reply instanter is

GRANTED.

SO ORDERED on April 9, 2010.

<pre>                                             S/ Joseph S. Van Bokkelen                
                                            JOSEPH S. VAN BOKKELEN
                                            UNITED STATES DISTRICT JUDGE</pre>