# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

KEVIN D. MILLER and JAMILA D. MILLER,   )
      Plaintiffs,                  )
                               )
      v.                          )    CAUSE NO.: 2:09-CV-205-JVB-PRC
                               )
CITY OF PLYMOUTH, *et al.*,         )
      Defendants.               )

## OPINION AND ORDER

This matter is before the Court on (1) Defendant, City of Plymouth's Motion to Bifurcate and Defer Discovery or, Motion in the Alternative for Protective Order [DE 72], filed by Defendant City of Plymouth on January 15, 2010; (2) Defendant, John Weir's, Motion for Protective Order [DE 73], filed by Defendant Weir on January 15, 2010; (3) Plaintiff Kevin D. Miller's First Motion to Compel Discovery Responses from Defendant City of Plymouth [DE 95], filed by Plaintiff Kevin D. Miller on February 12, 2010; and (4) Plaintiff Kevin D. Miller's First Motion to Compel Discovery Responses from Defendant John Weir [DE 96], filed by Defendant Kevin D. Miller on February 12, 2010.

## PROCEDURAL AND FACTUAL BACKGROUND

On July 22, 2009, Plaintiffs, *pro se*, filed their Complaint and Demand for Jury Trial against the Defendants, arising out of an alleged traffic stop that occurred on May 14, 2008. Plaintiffs brought the claims alleged in their Complaint pursuant to 42 U.S.C. § 1983, alleging: that Defendants Weir, Laffoon and Carter violated their rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution; pursuant to *Monell*,[1] that Defendant City of Plymouth and the Marshall County Sheriff's Department violated their rights under the First, Fourth,

---

[1] *See Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

and Fourteenth Amendments to the United States Constitution; as well as various state law claims against the Defendants.

Defendant City of Plymouth filed its Motion to Bifurcate and Defer Discovery or, Motion in the Alternative for Protective Order [DE 72] on January 15, 2010, requesting that the Court bifurcate discovery on Plaintiffs' *Monell* claims, or enter a protective order regarding the scope of some of Plaintiffs' discovery directed to it. Defendant John Weir filed a Motion for Protective Order on January 15, 2010. Defendants City of Plymouth and Weir filed a joint brief in support of their motions for protective order on January 15, 2010. Plaintiffs filed a Joint Response to the Motion to Bifurcate and Motions for Protective Order on February 1, 2010, to which Defendants City of Plymouth and Weir filed reply briefs on February 4, 2010.

Plaintiff Kevin D. Miller filed a First Motion to Compel Discovery Responses from Defendant City of Plymouth and First Motion to Compel Discovery Responses from Defendant John Weir, both on February 12, 2010. Plaintiff Kevin D. Miller filed memoranda in support of both motions on February 1, 2010. Each of the Defendants filed response briefs on February 16, 2010, to which Plaintiff Kevin D. Miller filed reply briefs on February 23, 2010.

The Court addresses each motion in turn.

## ANALYSIS

### A. City of Plymouth's Request to Bifurcate and Defer Discovery on *Monell* Issues

In the instant Motion to Bifurcate, Defendant City of Plymouth requests that the Court bifurcate discovery on Plaintiffs' *Monell* claims because if the Plaintiffs lose on their claims against Defendant Weir, then the case will not move forward against Defendant City of Plymouth, and deferring discovery on the *Monell* claims until after completion of fact discovery against Defendant Weir will allow the Court to reassess the case and avoid having the parties incur unnecessary time and expense in conducting *Monell* discovery. Plaintiffs object to Defendant City of Plymouth's

request on the grounds that bifurcation will decrease efficiency as discovery related to their claims against Defendant Weir can also be used to prove their *Monell* claims against the City of Plymouth and bifurcation will lead to "satellite litigation" over what constitutes *Monell*-related discovery. Further, Plaintiffs argue that by producing some materials that are allegedly responsive to their *Monell*-related discovery requests, Defendant City of Plymouth has waived its opportunity to bifurcate discovery.

Addressing Plaintiffs' argument that Defendant City of Plymouth's production of documents constitutes a waiver of its opportunity to bifurcate discovery, the Court notes that Plaintiffs have failed to provide any case law in support of this argument. Further, although the documents that Defendant City of Plymouth produced appear to be in response to requests for production of documents related to Plaintiffs' *Monell* claims against it, Defendant purports to have produced some of the requested material because it found the material relevant to the claims against Defendant Weir, not Plaintiffs' *Monell* claims. Accordingly, the Court finds that Defendant City of Plymouth has not waived its right to seek bifurcation and will address the merits of its request.

Pursuant to the Supreme Court's holding in *Monell*, a local government can only be sued under 42 U.S.C. § 1983 where the plaintiff's injury is caused by execution of the government's policy or custom. *Monell*, 436 U.S. at 694. Here, Plaintiffs allege in their Complaint that the injuries that they sustained as a result of Defendant Weir's, Laffoon's, and Carter's conduct occurred as a result of Defendant City of Plymouth's failure to adequately train and/or supervise those officers. In particular, Plaintiffs allege that Defendant City of Plymouth failed to provide Defendants Weir, Laffoon, and Carter with adequate training or supervision regarding the prohibitive use of drug-interdiction checkpoints along thoroughfares, use of canines and canine sniffs, traffic stops, motor vehicle searches, physical searches of persons, detention of motorists, use or display of force, duty of law enforcement officers to intervene to prevent violations of

individuals' constitutional rights, and failed to require law enforcement officers to generate reports detailing incidents of canine sniffs or deployments, vehicle searches, personal searches, or handcuffed detention of motorists. *See* Pls.' Compl. ¶¶ 44-46.

A district court has discretion in deciding whether to bifurcate discovery involving *Monell* claims. *Cadiz v. Kruger*, No. 06 C 5463, 2007 WL 4293976, at *3 (N.D. Ill. Nov. 29, 2007). The decision of whether to bifurcate discovery is a case-specific analysis. *Id.* at *2. As Defendant City of Plymouth points out, *Monell* discovery in this case will not perfectly overlap with discovery on the individual claims. "That is inevitable with any *Monell* claim: while an individual Section 1983 claim focuses on the conduct of the individual officers, a *Monell* claim looks more broadly to the customs, policies or practices that are alleged to contribute to the individual misconduct." *Id.* at *3. "As a result, the presence of a *Monell* claim typically will expand the scope-and thus the cost-of discovery beyond that which would be relevant in a case involving only individual Section 1983 claims." *Id.* Thus, bifurcation does carry the possible benefit of avoiding those costs in the event that the Plaintiffs ultimately are unable to establish liability on a Section 1983 claim against Defendant Weir. *Id.*

But this reason alone is not sufficient to require bifurcation. While Defendant City of Plymouth generally contends that bifurcation will allow the parties to avoid the costs associated with *Monell*-related discovery, Defendant fails to specifically articulate how it will incur significant costs in having to respond to Plaintiffs' discovery requests related to its *Monell* claims. Further, Plaintiffs' *Monell* claims are not run-of-the-mill allegations of failure to train and/or supervise, but rather, Plaintiffs allege Defendant City of Plymouth's failure to train and/or supervise in specific areas, namely: prohibitive use of setting up drug-interdiction checkpoints, use of canines and conducting canine sniffs, motor vehicle searches, physical search of persons, conducting traffic stops, detention of motorists, use or display of force, and duty of law enforcement officers to

4

intervene to prevent violations of individuals' constitutional rights, as well as Defendant's failure to require law enforcement officers to generate reports detailing incidents of canine sniffs or deployments, vehicle searches, personal searches, or handcuffed detention of motorists. *See* Pls.' Compl. ¶¶ 44, 46. While Plaintiffs' discovery requests would require Defendant City of Plymouth to disclose documents related to several types of policies that it maintained, the Court notes that Defendant has failed to argue how complying with the requests in this case would be unduly burdensome and specifically how it will be costly. To the extent that Plaintiffs' *Monell* discovery requests are overly broad or would impose undue burden and expense, the Court can tailor them as necessary. *See Wilson v. City of Chicago*, No. 07 C 1682, 2008 WL 4874148, at *2 (N.D. Ill. July 24, 2008) (finding that the Court had no reason to believe that a plaintiff's *Monell* discovery would be a fishing expedition and was narrowly tailored where the plaintiff alleged that the defendant's training procedure was deficient in a specific way).

Further, "a stay of *Monell* discovery will achieve cost savings only if one assumes that the parties are never required to go back and conduct *Monell* discovery at some later date." *Cadiz*, 2007 WL 4293976, at *5. While Defendant City of Plymouth correctly asserts that if the Plaintiffs lose their claim against Defendant Weir, the case will fail against the City of Plymouth, other than making this general assertion, Defendant has failed to provide the Court with reasons supporting that it should assume that Plaintiffs' claims against Defendant Weir will fail. Accordingly, the Court declines to assume so.[2]

Therefore, at this stage of the proceedings, the Court declines to bifurcate discovery in this matter and denies Defendant, City of Plymouth's Motion to Bifurcate and Defer Discovery or,

---

[2] Further, although the Court has yet to set a discovery deadline in this matter, given that Defendant City of Plymouth does not request that the Court also bifurcate the trial on Plaintiffs' *Monell* claims, the parties are faced with the likelihood that if after discovery of Plaintiffs' individual claims has concluded and the case proceeds against the Defendant City of Plymouth, the parties will need to conduct additional discovery on Plaintiffs' *Monell* claims and further delay the trial in this matter.

Motion in the Alternative for Protective Order, to the extent that it seeks to bifurcate discovery.[3]

### B. City of Plymouth's and Defendant Weir's Motions for a Protective Order

Federal Rule of Civil Procedure 26(c)(1) provides that:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending--or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, *for good cause*, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
> (A) forbidding the disclosure or discovery . . . .

Fed. R. Civ. P. 26(c)(1) (emphasis added). A district court has discretion in deciding when a protective order is appropriate and what degree of protection is required. *Felling v. Knight*, 211 F.R.D. 552, 554 (S.D. Ind. 2003). As Rule 26(c)(1) provides, only good cause is required in determining whether or not to issue a protective order. *Beauchem v. Rockford Prods. Corp.*, No. 01 C 50134, 2002 WL 31155088, at *3 (N.D. Ill. Sept. 27, 2002). "The rule essentially operates to balance the public's interest in open proceedings against an individual's private interest in avoiding 'annoyance, embarrassment, oppression, or undue burden or expense . . . .'" *Felling*, 211 F.R.D. at 554. The party seeking the protective order has the burden of showing that good cause exists for it. *Id.*

Here, Defendants City of Plymouth and Weir request that the Court issue a protective order limiting the scope of discovery on Plaintiffs' requests for information related to the identity of individuals who have been stopped for alleged traffic or equipment violations, subjected to a canine sniff, vehicle searches, personal searches, and/or handcuffed; the identity of individuals who have asserted formal or informal allegations of misconduct against the Plymouth Police Department

---

[3] Because the Court has declined to bifurcate discovery in this matter, Plaintiffs' arguments that permitting bifurcation will lead to "satellite litigation" over what constitutes *Monell*-related discovery are rendered moot.

and/or Defendant Weir; the identity of each person employed by the Plymouth Police Department as a law enforcement officer from January 1, 1999, until the present; and formal and informal complaints and disciplinary action against Defendant Weir and other officers.

First, Defendants City of Plymouth and Weir argue that the Plaintiffs' requests for the identity of individuals who have been stopped for alleged traffic or equipment violations, subjected to a canine sniff, vehicle searches, personal searches, and/or handcuffed, or who have asserted formal or informal allegations of misconduct against the Plymouth Police Department and/or Defendant Weir is a request for information that is privileged under Indiana law as "criminal history data" or "criminal intelligence information".

Indiana Code § 10-13-3-5 defines "criminal history data" as "information collected by criminal justice agencies, the United States Department of Justice for the department's information system, or individuals." Ind. Code § 10-13-3-5(a). Section 10-13-3-5(b) further provides that the term consists of:

> (1) Identifiable descriptions and notations of arrests, indictments, informations, or other formal criminal charges.
> (2) Information, including a photograph, regarding a sex or violent offender (as defined in IC 11-8-8-5) obtained through sex or violent offender registration under IC 11-8-8.
> (3) Any disposition, including sentencing, and correctional system intake, transfer, and release.
> (4) A photograph of the person who is the subject of the information described in subdivisions (1) through (3).

Ind. Code § 10-13-3-5(b). This term also includes fingerprint information. Ind. Code § 10-13-3-5(c). Under Indiana law, "a law enforcement agency shall release a limited criminal history to or allow inspection of a limited criminal history by noncriminal justice organizations or individuals only if the subject of the request . . . is placed under arrest for the alleged commission of a crime . . . ." Ind. Code § 10-13-3-27(a)(5).

Indiana Code § 5-2-4-1 defines "criminal intelligence information" as "information on identifiable individuals compiled in an effort to anticipate, prevent or monitor possible criminal activity, including terrorist activity." Ind. Code § 5-2-4-1(2).[4] "Criminal intelligence information" is considered confidential under Indiana law and may only be disseminated "[w]hen necessary to avoid imminent danger to life or property . . . ." Ind. Code § 5-2-4-7(b); Ind. Code § 5-2-4-6.

After reviewing the discovery requests in light of the above-referenced statutory provisions, the Court concludes that the requested information does not constitute "criminal history data" or "criminal intelligence information". First, the information protected under Indiana law as "criminal history data" appears to relate to a person's criminal background. Plaintiffs' requests for the identity of individuals who have been stopped for alleged traffic or equipment violations, subjected to a canine sniff, vehicle searches, personal searches, and/or handcuffed, or who have asserted formal or informal allegations of misconduct against the Plymouth Police Department and/or Defendant Weir does not fall within this category of information. Further, the information that Plaintiffs request does not fall under the category of information protected as "criminal intelligence information". Indiana Code § 5-2-4-1(2) provides that "criminal intelligence information" does not include information on identifiable individuals "compiled in the course of an investigation of specific criminal acts." Ind. Code § 5-2-4-1(2). The identity of individuals who have asserted allegations of misconduct does not fall under this category of protected information. Additionally, individuals who have been stopped for alleged traffic or equipment violations are not necessarily stopped in an effort to anticipate, prevent or monitor possible criminal activity, and the information that Defendants City of Plymouth and Weir obtained from those stops does not appear to constitute "criminal intelligence information." Accordingly, the requested information is not protected under

---

[4] As of July 1, 2010, an amended version of this statute will go into effect. However, the definition of "criminal intelligence information" will remain the same.

Indiana law.

Further, "state law does not supply the rule of decision in a discovery dispute when the principal claim is a federal claim," as it is here. *Scaife v. Boenne*, 191 F.R.D. 590, 595 (N.D. Ind. 2000). "[W]hen professional records are being sought, the privacy interests of those involved should be limited in a federal civil rights action brought against a police officer in view of the role played by the police officer as a public servant who must be accountable to public review." *Id.* Aside from relying on Indiana law, Defendants City of Plymouth and Weir fail to provide authority in support of their refusal to disclose the identities regarding individuals who were stopped for alleged traffic or equipment violations or who asserted allegations of misconduct against the Plymouth Police Department or Defendant Weir. Regarding the requested information related to allegations of misconduct, the record indicates that Defendants City of Plymouth and Weir have disclosed to the Plaintiffs letters of commendation for Defendant Weir's conduct. "Revealing the names of those people who have filed complaints should be no more burdensome to produce than providing the names of those who have submitted commendations." *Id.* at 596. Accordingly, Defendants City of Plymouth and Weir have failed to show good cause for limiting discovery on the identities of individuals who have been stopped for alleged traffic or equipment violations, subjected to a canine sniff, vehicle searches, personal searches, and/or handcuffed, or who have asserted formal or informal allegations of misconduct against the Plymouth Police Department and/or Defendant Weir.

Next, Defendants City of Plymouth and Weir argue that Plaintiffs' request, in Plaintiffs' Interrogatory No. 1 to Defendant City of Plymouth, that Defendant City of Plymouth identify every person employed as a law enforcement officer with its police department from January 1, 1999, to the present is too broad. Instead, Defendant City of Plymouth proposes to limit disclosure to the names of officers who were present at any incident where a formal complaint was filed against Defendant Weir for violation of a detainee's rights, similar to the rights alleged to have been violated

in this case.  Plaintiffs argue that the requested information is relevant because current or former employees may be familiar with unwritten customs, policies, and practices of the Plymouth Police Department which would make Plaintiffs' *Monell* claims more or less probable than without the evidence.  While the identities of other officers present at the scene of the events underlying the instant suit, or who have been involved in similar incidents, may be relevant to Plaintiffs' *Monell* claims, Plaintiffs have failed to provide any law, and the Court is unable to find any, supporting their request for the identities of *all* law enforcement officers who worked for the Plymouth Police Department over the last ten years.  "[D]iscovery is not to be used as a fishing expedition." *E.E.O.C. v. Harvey L. Walner & Associates*, 91 F.3d 963, 971 (7th Cir. 1996).  Accordingly, Defendants City of Plymouth and Weir have shown good cause for limiting the scope of discovery on Plaintiffs' Interrogatory No. 1 to Defendant City of Plymouth.  The Court will limit the scope of this request to individuals employed as law enforcement officers for the City of Plymouth Police Department at any time from the period of January 1, 2008, through the present.

Next, Defendants City of Plymouth and Weir request that the Court issue a protective order limiting the scope of discovery on Plaintiffs' requests for copies of documents related to formal or informal allegations of misconduct against Defendant Weir and any other Plymouth law enforcement officer, as well as documents concerning disciplinary action against Defendant Weir and any other Plymouth law enforcement officer.[5]

As a preliminary matter, Plaintiffs argue that Defendants City of Plymouth and Weir have waived objections to the information requested as to Defendant Weir, requested in Plaintiffs' Request for Production to Defendant Weir Nos. 8 and 9, because they failed to object to these document requests by the agreed December 22, 2009 deadline.  "Failure to timely assert objections

---

[5] Plaintiffs limit their request of information related to other Plymouth police officers to a period of January 1, 2004, until the present.

to discovery requests may result in a waiver of all objections that could have been seasonably asserted." *Autotech Tech. Ltd. Partnership v. Automationdirect.com, Inc.*, 236 F.R.D. 396, 398 (N.D. Ill. 2006). Defendants City of Plymouth and Weir argue that Requests to Produce Nos. 8 and 9 are identical to Requests Nos. 47 and 48 that were sent to the City of Plymouth, to which Defendant City of Plymouth has consistently objected. Defendant City of Plymouth has attached as an exhibit to its Motion for Protective Order a December 21, 2009 letter from counsel for the Defendants to the Plaintiffs indicating that Defendant City of Plymouth objected to Requests to Produce Nos. 45 through 48. *See* Def. City of Plymouth's Mot. for Protective Order, Ex. A. While Defendant City of Plymouth cites Requests Nos. 47 and 48, the Court concludes that Defendant meant to cite Requests Nos. 45 and 46. Requests for Production to Defendant City of Plymouth Nos. 45 and 46 request "all documents concerning and/or relating to all formal or informal allegations of misconduct against Weir in his capacity as a Plymouth Police Department law enforcement officer" and "all documents concerning and/or relating to disciplinary action taken against Weir by the Plymouth Police Department", respectively. Def. City of Plymouth's Mot. for Protective Order, Ex. C. The documents requested in Requests Nos. 45 and 46 are the same type of documents that Plaintiffs request from Defendant Weir through their Requests for Production of Documents to Defendant Weir Nos. 8 and 9. Defendant City of Plymouth objected to the requested documents, albeit specifically to Requests to Produce Nos. 45 and 46, prior to the December 22, 2009 deadline. Therefore, the Court finds that the Defendants' objections to Requests Nos. 8 and 9 to Defendant Weir are not waived.[6]

Defendants City of Plymouth and Weir argue that information concerning formal or informal complaints against Defendant Weir or other officers for any misconduct other than the alleged

---

[6] Likewise, the Court rejects Plaintiffs' argument that by not providing all potential objections to all discovery requests by the December 22, 2009 deadline, Plaintiffs' agreed extension of the deadline for Defendants to object to Plaintiffs' discovery requests is void, making all objections untimely.

misconduct at issue in this suit is not reasonably calculated to lead to the discovery of relevant evidence. Instead, the Defendants seek to limit disclosure of this information to complaints of the same type of charges alleged in this suit. The Defendants also make the same arguments as to information related to disciplinary action taken against Defendant Weir and other Plymouth police officers.

Under Federal Rule of Civil Procedure 26(b)(1), a party may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. *See* Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence." *Whitlow v. Martin*, 259 F.R.D. 349, 352 (C.D. Ill. 2009). "Numerous courts have held that the personnel files and complaint histories of defendant officers are relevant in § 1983 actions involving police misconduct, particularly where, as here, plaintiffs allege a *Monell* policy, practice and custom claim against the municipality." *Vodak v. City of Chicago*, No. 03 C 2463, 2004 WL 1381043, at *5 (Slip Copy) (N.D. Ill. May 10, 2004). This information is also relevant where, as here, a plaintiff seeks punitive damages. *Martin v. Fort Wayne Police Dept.*, Cause No. 1:09-CV-00048, 2010 WL 399726, at *2 (N.D. Ind. Jan. 28, 2010). Further, information regarding complaints against other officers is relevant where the municipality is a defendant. *See Scaife*, 191 F.R.D. at 596 (providing that information of complaints lodged against other officers is relevant where the municipality is made a defendant to a claim); *Hampton v. City of San Diego*, 147 F.R.D. 227, 229 (S.D. Cal. 1993) (finding that requests for personnel files and internal affairs histories of other officers may be relevant to the plaintiffs' claims against the city defendant as it relates to its policies of hiring, training, supervision and control).

Courts have declined to limit disclosure of prior complaints and disciplinary records to claims similar to those raised in the lawsuit. *See Vodak*, 2004 WL 1381043, at *5 (declining to limit

discovery to disclosure of prior complaints against the defendant officers solely to complaints similar to those raised in the lawsuit); *Lepianka v. Village of Franklin Park*, No. 03 C 2991, 2004 WL 626830, at *2 (N.D. Ill. March 26, 2004) (declining to limit disclosure of prior complaints and disciplinary records to the claims alleged in the lawsuit). Rather, "the trial judge will determine before or at the trial whether 'other acts' are similar enough and close enough in time to be relevant to the matter in issue and thus, admissible." *Vodak*, 2004 WL 1381043, at *5. Further, allegations in a plaintiff's complaint regarding municipal liability and supervisory liability based on negligent hiring, failure to train, and a municipal policy or custom "portend[s] a broad inquiry into police practices and procedures, citizen complaints . . . and internal disciplinary actions, extending well beyond the immediate circumstances surrounding plaintiffs' arrests." *Langford v. City of Elkhart*, Nos. S91-322(AS), S91-323(AS), and S91-571(AS), 1992 WL 404443, at *2 (N.D. Ind. April 21, 1992). Here, Plaintiffs' Complaint alleges violations of their First, Fourth, and Fourteenth Amendment rights, inadequate training, and alleged policies that they believe led to the inadequate training of the officers.

Accordingly, Plaintiffs are entitled to receive documents related to prior allegations of misconduct and disciplinary action taken against Defendant Weir, and the Court declines to limit this material solely to complaints and discipline for conduct similar to the allegations involved in this matter. Further, because the City of Plymouth is a defendant in this matter, Plaintiffs are also entitled to discovery related to complaints and disciplinary records against other officers, without the limitations suggested by the Defendants. However, to mitigate any privacy concerns, the Court directs the Defendants to redact irrelevant personal information contained in the documents, such as home addresses, telephone numbers, social security numbers, insurance and benefit information, or other family member information, prior to disclosing the material to the Plaintiffs. *See Martin*, 2010 WL 399726, at *2 (requiring redaction prior to disclosure). The Court also directs Defendants

to redact irrelevant personal information contained in the documents related to identities of individuals who have been stopped for alleged traffic or equipment violations, subjected to a canine sniff, vehicle searches, personal searches, and/or handcuffed, or who have asserted formal or informal allegations of misconduct against the Plymouth Police Department and/or Defendant Weir.

Therefore, the Court finds that Defendants City of Plymouth and Weir have failed to show good cause to limit discovery related to prior complaints, and disciplinary action taken, against Defendant Weir and/or other Plymouth police officers.[7]

The Court grants the Defendant, City of Plymouth's Motion to Bifurcate and Defer Discovery or, Motion in the Alternative for Protective Order, solely to the extent that it requests that the Court prevent disclosure of the identities of all officers who have worked for the City of Plymouth Police Department from January 1, 1999, until the present. However, the Court denies the Defendant, City of Plymouth's Motion to Bifurcate and Defer Discovery or, Motion in the Alternative for Protective Order and Defendant, John Weir's, Motion for Protective Order as to the other discovery limitations sought.[8]

### C. Plaintiff Kevin D. Miller's Motions to Compel Discovery

As a preliminary matter, Defendants City of Plymouth and Weir object to the Motions to Compel Discovery on the ground that Plaintiff Kevin D. Miller ("Plaintiff") has failed to confer with

---

[7] In their reply brief, Defendants City of Plymouth and Weir argue that *Vodak* supports an *in camera* review of the information instead of full disclosure. However, the Defendants fail to explain why an *in camera* review of the requested materials would be needed in this case and, in any event, the Court's requirement that irrelevant personal information be redacted addresses any privacy concern that the Defendants may have–although they have not raised such a specific concern.

[8] In Defendant Weir's Motion for Protective Order, he requests that the Court strike Plaintiffs' Request to Produce No. 7, which requests copies of log entries, radio transmissions, MDT transmissions, and/or audio and video recordings documenting his activity during the entire shift on May 14, 2008. However, in his brief in support, Defendant Weir fails to provide reasons why such information is irrelevant or why Plaintiffs should not be entitled to this information. "An underdeveloped argument, or argument not raised at all, is a waived argument." *Beverly v. Depuy Orthopaedics, Inc.*, No. 3:07-CV-137-AS, 2008 WL 45357, at *2 (N.D. Ind. Jan. 2, 2008). Therefore, the Court denies Defendant Weir's request.

the Defendants, and file a certification, pursuant to Federal Rule of Civil Procedure 37(a)(1). However, Northern District of Indiana Local Rule 37.1(c) provides that if the certification required to be made under Rule 37(a)(1) is not filed, then the Court may deny the discovery motion, "except those motions brought by or against a person appearing *pro se*". N.D. Ind. L.R. 37.1(c). Accordingly, as a *pro* se plaintiff in this matter, Plaintiff is not required to file the certification required by Rule 37(a)(1).

Further, Plaintiff alleges that the Defendants failed to sign their interrogatory responses, as required by Federal Rule of Civil Procedure 33(b)(5), and requests that the Court order the Defendants to do so. Rule 33(b)(5) provides that "[t]he person who makes the answers must sign them, and the attorney who objects must sign any objections." Fed. R. Civ. P. 33(b)(5). Here, Defendant City of Plymouth filed its responses and objections to Plaintiff's First Set of Interrogatories [DE 68] on January 15, 2010, and Defendant Weir filed his responses and objections to Plaintiff's First Set of Interrogatories [DE 70] on January 15, 2010. However, both responses are unsigned and do not include a signed and sworn affirmation. Accordingly, the Defendants have failed to comply with Rule 33(b)(5) and the Court orders the Defendants and counsel for Defendants to submit signed interrogatory responses to Plaintiff.

Plaintiff argues that Defendant City of Plymouth inadequately responded to Plaintiff's Interrogatories to Defendant City of Plymouth Nos. 1, 3, 4, 5, 7, 11, 12, and 13, and Requests for Production Nos. 16-31, 34-40, and 42-52. Plaintiff also argues that Defendant Weir inadequately responded to Plaintiff's Interrogatories to Defendant Weir Nos. 1-6 and 12, and Requests for Production Nos. 1-4 and 6-9. Accordingly, the Court will evaluate each in turn.

*1. Interrogatories to Defendant City of Plymouth*

a. Interrogatory No. 1

As discussed in the portion of this Opinion and Order addressing the Defendants' Requests

for a Protective Order, Interrogatory No. 1 requests that Defendant City of Plymouth identify every person employed as a law enforcement officer with its police department from January 1, 1999. For the reasons already discussed, the Court finds this Request to be too broad as Plaintiff has failed to provide any law, and the Court is unable to find any, supporting his request for the identities of *all* law enforcement officers who worked for the Plymouth Police Department over the last ten years. Accordingly, the Court will limit the scope of this request to individuals employed as law enforcement officers for the City of Plymouth Police Department at any time from the period of January 1, 2008, through the present.

While Plaintiff argues that the requested information is calculated to lead to evidence concerning Defendant Weir's conduct and reputation, Plaintiff has failed to show how Defendant Weir's reputation is relevant to the claims in this suit. In any event, Federal Rule of Evidence 404(a) provides that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except" for a number of exceptions that are inapplicable here. Fed. R. Evid. 404(a). Further, Federal Rule of Evidence 404(b) provides that "[e]vidence of other . . . wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."[9] Fed. R. Evid. 404(b). Accordingly, evidence concerning Defendant Weir's reputation would likely be inadmissible.

Further, to the extent that Plaintiff seeks such evidence to support Plaintiffs' failure to train, supervise, and/or discipline claims, Plaintiff can obtain information regarding Defendant Weir's prior misconduct, by obtaining his personnel file and complaint and disciplinary record.

Therefore, the Court grants Plaintiff's Motion to Compel limited to the identities of individuals employed as law enforcement officers for the City of Plymouth Police Department at

---

[9] Such evidence, however, may be admissible for other purposes, such as motive or intent, none of which Plaintiff argues applies here.

any time from the period of January 1, 2008, through the present.

b. Interrogatories Nos. 3 and 7

In Plaintiff's Interrogatory Nos. 3 and 7, Plaintiff requests that Defendant City of Plymouth identify all persons who have asserted formal and/or informal allegations of misconduct against Plymouth Police Department law enforcement officers since January 1, 2004, and against Defendant Weir.  As discussed above in this Opinion and Order, Defendants have failed to show good cause for preventing or limiting disclosure of the requested information.  Accordingly, the Court grants the instant Motion to the extent that it requests that Defendant City of Plymouth fully respond to Interrogatories Nos. 3 and 7 by disclosing the names of individuals who have filed formal and/or informal allegations of misconduct against Plymouth Police Department law enforcement officers since January 1, 2004, and/or against Defendant Weir in his capacity as a Plymouth Police Department law enforcement officer.[10] *See Scaife*, 191 F.R.D. 596 (compelling production of names of individuals who have lodged complaints against officers where the plaintiff sought punitive damages).

c. Interrogatories Nos. 4 and 5

In Plaintiff's Interrogatory No. 4, Plaintiff requests that Defendant City of Plymouth identify, by title, every training course that the Plymouth Police Department requires its officers to complete, specifying the contents of each course.  In its Answer to Plaintiff's Interrogatories, Defendant City of Plymouth responded by providing that "[t]he training courses required for members of the Plymouth Police Department are governed by I.C. 5-2-1-1, et seq." Def. City of Plymouth's Answer to Pl.'s First Set of Interrogatories [DE 68] (underlining in the original).

In support of the instant Motion, Plaintiff argues that the City's response is insufficient

---

[10] The Court also rejects Defendant City of Plymouth's request to remove identifying information from existing complaints as Plaintiffs need the identities of the complainants to be able to verify the information contained in the complaints.

because it does not specifically identify the courses or their content. In its response brief, Defendant City of Plymouth represents that it has completely responded to the Interrogatory as it does not participate in the planning or offering of the officers' training and that this is the State of Indiana's responsibility.

Federal Rule of Civil Procedure 33(b)(3) provides that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and *fully* in writing under oath." Fed. R. Civ. P. 33(b)(3) (emphasis added).

Indiana Code § 5-2-1-1 provides, in relevant part, that:

> [i]t is the intent of this chapter to encourage all law enforcement officers, departments, and agencies within this state *to adopt standards which are higher than the minimum standards implemented under this chapter and such minimum standards shall in no way be deemed sufficient or adequate in those cases where higher standards have been adopted or proposed.*

Ind. Code § 5-2-1-1(c) (emphasis added). Further, Indiana Code § 5-2-1-1(d) provides that the chief executive officer of a law enforcement department or agency "shall use all reasonable means to ensure that the law enforcement officers within the department or agency comply with this chapter." Ind. Code § 5-2-1-1(d). Further, pursuant to Indiana Code § 5-2-1-1(d), the chief executive officer of the department or agency "shall submit to the executive director of the [law enforcement training] board, not later than March 31 of each year, a written report detailing the basic and inservice training status of each law enforcement officer on the payroll of the department or agency." Ind. Code § 5-2-1-1(d). Accordingly, even if the City does not participate in planning or offering training to its officers, it still must know what training they attend and make sure that the officers comply with the training requirements.

Additionally, while Indiana Code § 5-2-1-9 identifies the types of training that officers must undergo, Defendant City of Plymouth has failed to identify which training programs its officers have attended and fails to identify whether, pursuant to Section 5-2-1-1, it has adopted higher standards,

18

which may require additional training. Therefore, it has not fully answered Interrogatory No. 4.

Accordingly, the Court hereby grants the instant Motion to the extent that Plaintiff requests that Defendant City of Plymouth fully respond to Interrogatory No. 4 by identifying, by title, every training course that its officers are required to complete, including the contents of each course.

Further, Plaintiff's Interrogatory No. 5 requests that Defendant City of Plymouth identify every law enforcement officer who has not completed a required training course, as requested in Interrogatory No. 4, specifying each course that the officer has failed to complete. Defendant City of Plymouth responded to the Interrogatory by objecting on the grounds that it is over broad, burdensome, and not reasonably calculated to lead to the discovery of relevant evidence. However, in its response brief to the instant Motion to Compel, Defendant relies on its arguments in the Motion to Bifurcate, which the Court has denied in this Opinion and Order, and provides that if an officer is required to undergo a training course, then the officer cannot be working unless he or she completed the course. The Court finds that the information requested is relevant to Plaintiffs' failure to train claim. Further, although Defendant failed to address how the Interrogatory is over broad or burdensome in its response brief to the Motion to Compel, the Court finds that the requested information is neither overly broad nor burdensome as the City must monitor whether its law enforcement officers have completed training and the type of training completed in order for it to comply with Indiana Code § 5-2-1-1(d). Accordingly, the Court grants the instant Motion to the extent that Plaintiff requests that Defendant City of Plymouth fully respond to Interrogatory No. 5 by identifying officers who have not completed the required training courses that other law enforcement officers working for the Plymouth Police Department are required to undergo, specifying the courses that the officer has failed to complete. If all officers have completed the required training courses, the Defendant City of Plymouth is directed to provide so.

d. Interrogatory No. 11

Plaintiff's Interrogatory No. 11 requests that Defendant City of Plymouth identify each person who has custody and/or control over archived Plymouth Police Department MDT and/or radio transmissions. Defendant responded to the Interrogatory by identifying Defendant Weir as having "custody over the recording of the incident in question." Def. City of Plymouth's Answer to Pl.'s First Set of Interrogatories [DE 68]. Plaintiff alleges that Defendant's response fails to disclose the identities of the persons requested and fails to address the archived MDT and/or radio transmissions. The Court agrees with Plaintiff and finds that Defendant City of Plymouth's response is incomplete as it fails to specifically address what constitutes a "recording of the incident" and does not address whether Defendant Weir also has the MDT and or radio transmissions. Accordingly, the Court grants the instant Motion to the extent that Plaintiff requests that Defendant City of Plymouth fully respond to Interrogatory No. 11.

e. Interrogatory No. 12

The Court denies as moot the instant Motion to the extent that Plaintiff seeks to compel a response to Interrogatory No. 12 as Defendant has disclosed the requested information in its response brief.

f. Interrogatory No. 13

Plaintiff's Interrogatory No. 13 requests that Defendant City of Plymouth identify each person who reviewed any report that Defendant Weir may have generated documenting the events that occurred during the Plaintiffs' roadside stop, including the date that each person reviewed any report. Defendant responded to the Interrogatory by providing that Defendant Weir prepared a report and forwarded it to the County Sheriff. In its response brief to the instant Motion to Compel, Defendant provides that the Chief and Assistant Chief also examined Defendant Weir's report. However, Defendant fails to provide the names of the Chief and Assistant Chief. Further, as an exhibit to their response brief to Plaintiffs' Motion for Partial Summary Judgment, Defendants City

of Plymouth and Weir attached a copy of Defendant Weir's narrative for the incident underlying this case, which indicates that it was sent to "Becky Carswell" and "Cathy Glaub". *See* [DE 54]. However, Defendants have failed to identify these individuals as having reviewed Defendant Weir's report. Accordingly, Defendant City of Plymouth's response to the Interrogatory is incomplete.

Therefore, the Court grants the instant Motion and orders Defendant City of Plymouth to identify, by name, all of the individuals who reviewed Defendant Weir's report(s) documenting the events underlying the instant suit, including his Narrative, and the date(s) that each person reviewed the report(s) or Narrative.

### 2. *Requests for Production to Defendant City of Plymouth*

#### a. Requests Nos. 16-21

In Requests for Production Nos. 16-21, Plaintiff requests copies of training materials related to constitutional limits on the use of police/drug-detection dogs (No. 16), canine sniff of vehicles during traffic stops (No. 17), the duty to intervene to prevent or stop violations of individuals' constitutional rights (No. 18), individual rights to freedom of speech (No. 19), individual rights to equal protection under the law (No. 20), and individual rights against selective law enforcement (No. 21). Defendant City of Plymouth responded to the Requests by providing that it does specific training only in the use of firearms, emergency vehicle operation and defensive tactics.

Pursuant to Federal Rule of Civil Procedure 34, "[a] party may serve on any other party a request within the scope of Rule 26(b) . . . to produce and permit the requesting party or its representative to inspect, copy, test, or sample [designated documents] in the responding party's possession, custody, or control . . . ." Fed. R. Civ. P. 34(a)(1). A party has "possession, custody, or control" of documents if "the party has *actual* possession, custody, or control, or has the legal right to obtain the documents on demand." *Eley v. Herman*, No. 1:04-CV-416, 2005 WL 3115304, at *2 (N.D. Ind. Nov. 21, 2005) (quoting *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995)).

"Control means the legal right to obtain documents upon demand." *Central States, Southeast and Southwest Areas Health and Welfare Fund v. Neurobehavioral Associates, P.A.*, No. 93 C 6169, 1997 WL 757879, at *3 (N.D. Ill. Dec. 2, 1997). Nonetheless, a document is not in a party's possession, custody or control if the document does not exist. *Id.*

In response to the instant Motion to Compel, Defendant City of Plymouth provides that its response to the Requests is complete as it does no in-house training on the factors outlined in the Requests. To the extent that Defendant "has no documents to produce in response to a request, [Plaintiff] is at least entitled to a response stating as much." *Eley*, 2005 WL 3115304 at *2.

Accordingly, the Court orders Defendant to fully respond to Requests Nos. 16-21, and, if no responsive documents exist, Defendant shall, via affidavit, (1) state that after diligent search there are no responsive documents in its possession, custody, or control and (2) describe its efforts to locate the documents responsive to the requests. The affidavit must fulfill these two requirements for *each* of the document requests. *See Link v. Taylor*, Cause No. 1:07-cv-338, 2009 WL 127660, at *2 (N.D. Ind. Jan. 20, 2009) (requiring a responding party to execute an affidavit providing that after diligent search there are no responsive documents in its possession, custody, or control, and describing the efforts taken to locate the responsive documents).

b. Requests Nos. 22-31, 42-44

In Requests Nos. 22-31, Plaintiff requests that Defendant City of Plymouth produce all reports and audio or video recordings since January 1, 2004, concerning traffic stops, canine sniffs of vehicles, vehicle searches during traffic stops, personal searches of motorists and/or their passengers during traffic stops, and handcuffed detention of motorists and/or their passengers.

Further, Requests Nos. 42-44 request that the City produce audio or video recordings of every traffic stop that Defendant Weir has initiated or assisted in, and/or in which he deployed a canine to conduct a sniff of the detained vehicle, since January 1, 2004. Defendant objected to these

Requests on the grounds that they are over broad, burdensome, and not reasonably calculated to lead to the discovery of relevant evidence.

Defendant, however, has failed to explain how the Requests are not likely to lead to the discovery of relevant evidence, are over broad or burdensome. The objecting party has the burden of showing with specificity that the request is improper. *McGrath v. Everest Nat. Ins. Co.*, 625 F. Supp. 2d 660, 670 (N.D. Ind. 2008). This burden cannot be met by "a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Id.*

The Court finds that the requested information is relevant to Plaintiffs' *Monell* claims, namely the failure to supervise. Further, Plaintiffs allege a violation of their right to equal protection under the Fourteenth Amendment. "To establish a violation of the Equal Protection Clause, the plaintiff 'must prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose.'" *Sow v. Fortville Police Dept.*, No. 1:08-0983-RLY-JMS, 2010 WL 1490370, at *6 (S.D. Ind. April 13, 2010). The information requested is relevant to showing whether the sniff searches, vehicle searches, handcuffed detentions, and/or physical searches occurred in a discriminatory manner.

Further, to the extent that Defendant argues that it can provide the information requested with the identity of the specific subject removed, as the identity of specific persons is protected under Indiana law, the Court has already rejected this argument when addressing the Motions for Protective Order.

Accordingly, the Court hereby grants the instant Motion to the extent that Plaintiff requests that Defendant City of Plymouth fully respond to Requests for Production Nos. 22-31 and 42-44.

c. Request No. 34

23

In Request No. 34, Plaintiff requests copies of all documents concerning and/or relating to the canine's training. Defendant produced training logs for the canine from January 2008 through September 2009. Plaintiff represents that he has discovered through informal discovery that the Plymouth Police Department has used the canine since at least September 2007, yet no training logs have been produced for that time period or pre-dating that time and Defendant City of Plymouth has failed to produce documents related to the canine's certification in drug detection. In its response brief, Defendant represents that discovery is complete on this matter and it will supplement its response should the need arise.

Given that Defendant has failed to address whether training logs exist since September 2007, and/or predating that time, or whether it has within its possession, custody, or control documents related to the canine's certification in drug detection, the Court hereby orders Defendant to produce copies of all documents relating to the canine's training, including documents regarding the canine's certification in drug detection. If no such documents exist, Defendant is to provide so, in the same manner as the Court has instructed regarding Requests Nos. 16-21.

d. Request Nos. 35, 37, 38, and 49

Defendant responded to these Requests by indicating that it "possesses no such documents." Def. City of Plymouth's Resp. to Pl.'s First Set of Requests for Production [DE 69]. In the instant Motion, Plaintiff requests that Defendant specify under oath whether it has such documents in its possession, custody, or control. While Defendant indicates that it "possesses" no such documents, it does not specify whether it has custody or control of such documents.

Accordingly, the Court grants the instant Motion to the extent that Plaintiff requests that Defendant City of Plymouth indicate whether or not responsive documents exist. To the extent such documents do not exist, the Court orders Defendant to provide so, in the same manner as instructed regarding Requests Nos. 16-21.

e. Request No. 36

In Request No. 36, Plaintiff requests that Defendant City of Plymouth produce copies of all documents concerning the canine's field performance. Defendant responded by purportedly producing training logs from January 2008 through September 2009. Plaintiff represents that Defendant has used the canine since at least September 2007, the requested information consists of field performance, not training logs, and Defendant only produced documents through August 2009.

In its response brief, Defendant has failed to address these issues. Accordingly, the Court grants the instant Motion to the extent that Plaintiff requests that Defendant produce documents related to the canine's field performance from the date that it was first used by the Plymouth Police Department until the present. To the extent that such documents contain irrelevant personal information, as discussed in the portion of this Opinion and Order addressing the Motions for Protective Order, the Court orders Defendant to redact such information prior to disclosure.

f. Request No. 39

In Request No. 39, Plaintiff requests copies of documents, including video recordings, concerning or relating to any attack training that the canine has undergone. Defendant responded to the discovery request by purportedly producing training logs for the canine from January 2008 through September 2009. Plaintiff represents that in the documents that Defendant provided to him, there is no certification indicating that the canine has been formally or successfully trained as an attack dog.

In its response brief to the instant Motion to Compel, Defendant represents that it has completed discovery on this matter. Defendant fails to address whether it has possession, custody, or control of documents related to attack dog training for the canine. Accordingly, the Court hereby grants the instant Motion to the extent that Plaintiff requests that Defendant produce documents related to the canine's formal training and certification as an attack dog, if such documents exist, or

25

indicate whether such documents do not exist, in the same manner as instructed regarding Requests Nos. 16-21.

g. Request No. 40

In Request No. 40, Plaintiff requests that, if Defendant Weir has been certified as a dog handler, Defendant produce all documents concerning and/or relating to Weir's training, including audio and/or video recordings, and the certificate(s) indicating successful completion of the training. Defendant City of Plymouth has produced Defendant Weir's personnel file and represents that discovery is complete on this matter. Plaintiff represents that there are no documents in Defendant Weir's produced personnel file related to formal training and certification as a dog handler.

The Court grants the instant Motion as to Request No. 40 and orders Defendant City of Plymouth to disclose documents, including audio and/or video recordings, related to Defendant Weir's training as a certified dog handler and any certificate indicating successful completion of the training, if such responsive materials exist. If no such documents exist, Defendant is to provide so, in the same manner as the Court has instructed regarding Requests Nos. 16-21.

h. Requests Nos. 45-48

In Requests Nos. 45 and 46, Plaintiff requests copies of all documents concerning all formal or informal allegations of misconduct, as well as disciplinary action taken, against Defendant Weir in his capacity as a Plymouth Police Department law enforcement officer. Plaintiff also requests, in Requests Nos. 47 and 48, copies of all documents concerning all formal or informal allegations of misconduct, and disciplinary action taken, against any Plymouth Police Department law enforcement officer since January 1, 2004.

As already discussed in this Opinion and Order relating to the Motions for Protective Order, the information requested through these Requests for Production are relevant to Plaintiffs' § 1983 and *Monell* claims and Defendant has failed to show good cause for limiting discovery on these

issues.  Accordingly, the Court grants the instant Motion and orders the Defendant to disclose the information requested in Requests Nos. 45-48, subject to redaction of irrelevant personal information, as previously discussed in this Opinion and Order.[11]

i. Requests Nos. 50, 51, and 52

In Request No. 50, Plaintiff requests copies of all log entries, radio transmissions, MDT transmissions, and/or audio/video recordings concerning the Plaintiffs' roadside detention.  Request No. 51 requests copies of the type of information requested in Request No. 50, but related instead to Defendant Weir's activities during his entire shift, including the events occurring during the Plaintiffs' roadside detention.  Request No. 52 requests copies of all reports and audio/video recordings which document the events that occurred during the Plaintiff's roadside detention.  Defendant City of Plymouth responded to Requests Nos. 50 and 52 by providing that it has already produced the audio/visual of the Plaintiff's roadside detention.  In response to Request No. 51, Defendant represented that it already produced the materials relevant to the incident described in the Complaint and objects to the production of any further materials from that shift as being statutorily protected.

Plaintiff represents in the instant Motion to Compel that the City's response is incomplete as it has failed to produce log entries, radio transmissions, MDT transmissions or any other responsive documents.  In response to the instant Motion, Defendant argues that the information requested related to other citizens who may have interacted with Defendant Weir is statutorily protected under Indiana law.  However, aside from citing the statutory provisions that it claims are applicable, Defendant City of Plymouth has failed to explain how the requested information constitutes either "criminal history data" or "criminal intelligence information."  Nonetheless, to the

_____

[11] Although Defendant originally objected to the Requests as being over broad and burdensome, Defendant failed to address these objections in briefing or further explain how the Requests are over broad or burdensome. Accordingly, these arguments are waived. *See Beverly,* 2008 WL 45357, at *2.

extent that Plaintiff requests information regarding other individuals in unrelated calls that Defendant Weir responded to during his entire shift on the night of the roadside detention underlying this case, the Court orders that irrelevant personal information, as already discussed in this Opinion and Order, be redacted prior to disclosure.

The Court grants the instant Motion as to Requests Nos. 50 through 52 and orders Defendant City of Plymouth to produce the requested information, subject to redaction of irrelevant personal information regarding other calls that Defendant Weir responded to during the remainder of his shift.

*3. Interrogatories to Defendant Weir*

a. Interrogatories Nos. 1 through 6

In Interrogatories 1 through 6, Plaintiff requests that Defendant Weir identify every person he has stopped for alleged traffic or vehicular equipment violations since January 1, 2004 (Interrogatory No. 1), specifying those individuals who were subjected to a canine sniff (Interrogatories Nos. 2 and 3), individuals who were driving a vehicle in which a canine allegedly indicated the presence of an illegal controlled substance (Interrogatory No. 4), were driving a vehicle in which no controlled substance was found after the canine indicated the presence of an illegal controlled substance (Interrogatory No. 5), and who were handcuffed and/or physically searched during a vehicle search in which no illegal controlled substance was found after the canine allegedly indicated the presence of the substance (Interrogatory No. 6).

Defendant Weir objected to these Interrogatories on the grounds that they were over broad, burdensome, not reasonably calculated to lead to the discovery of relevant evidence, and statutorily privileged. In his response brief to the instant Motion to Compel, Defendant Weir fails to explain how the Interrogatory is over broad or burdensome. As the objecting party, Defendant Weir has the burden of showing with specificity that the request is improper. *McGrath*, 625 F. Supp. 2d at 670. By not addressing these two objections, Defendant Weir has failed to meet that burden. *See id.*

Next, to the extent that Defendant Weir alleges that the requested information is subject to statutory privilege, in addressing the Defendants' Requests for a Protective Order, the Court already determined that the information requested here is not protected under the Indiana statutes that Defendant Weir cites.

Next, regarding Defendant Weir's relevancy argument, the Court finds that he is correct in arguing that the identification of the individuals stopped for traffic or vehicular equipment violations is not relevant to Plaintiff's *Monell* claim for failure to supervise, in that Defendant Weir allegedly fails to generate written reports detailing all incidents of canine sniffs, vehicle searches, personal searches, or handcuffed detention of motorists. However, the requested information is relevant to Plaintiff's Equal Protection claim under the Fourteenth Amendment. As already discussed in this Opinion and Order, "[t]o establish a violation of the Equal Protection Clause, the plaintiff 'must prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose.'" *Sow*, 2010 WL 1490370, at \*6. Further, Plaintiff must show that the officer acted either intentionally or with deliberate indifference. *Id.* The information requested is relevant to showing whether Defendant Weir's actions were motivated by a discriminatory purpose or had a discriminatory effect.

Accordingly, the Court grants the instant Motion as to Interrogatories Nos. 1 through 6.

b. Interrogatory No. 12

In Interrogatory No. 12, Plaintiff requests that Defendant Weir identify each person with whom he discussed any factual allegations asserted in this lawsuit and specify the purpose of the discussion and the date on which it occurred. Defendant Weir responded to the Interrogatory by providing that he only discussed this matter with his superiors and his attorneys. However, he failed to disclose the identities of these individuals, and, in the instant Motion to Compel, Plaintiff requests the purpose of the discussions and the dates on which they occurred.

In his response brief to the instant Motion, Defendant Weir represents that he has discussed this matter with his attorney, Steven P. Polick, but is uncertain of the exact dates that the discussions took place. Defendant Weir represents that the conversations between he and Attorney Polick involved responses to discovery and strategy for trial, which Defendant Weir claims constitute privileged information.

Regarding the attorney-client privilege, the Court notes that "[s]ince it makes the search for truth more difficult by preventing disclosure of what is often exceedingly relevant information, it is strictly construed and is limited to those instances where it is necessary to achieve its purposes." *In re Sulfuric Acid Antitrust Litigation*, 235 F.R.D. 407, 414 (N.D. Ill. 2006). The privilege extends to confidential communications between a client and a lawyer "[w]here legal advice of any kind is sought . . . from a professional legal advisor in his capacity as such." *Id.* (quoting *Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000)). This privilege is limited to situations where the attorney is acting as a legal advisor. *Id.* at 415. Any conversations between Defendant Weir and Attorney Polick related to strategy for trial in this matter would no doubt involve Attorney Polick acting in his capacity as a legal advisor and would be subject to the attorney-client privilege.

Next, Defendant Weir indicates in his response brief that he has discussed this matter with the Chief and Assistant Chief of the Plymouth Police Department regarding the preparation of discovery responses and provided background information on this matter to his superiors. Defendant Weir represents that he is uncertain of the exact dates that the conversations occurred. However, Defendant Weir fails to identify the names of the Chief and Assistant Chief.

Plaintiff fails to indicate in his reply brief whether the information that Defendant Weir has provided in his response brief is sufficient to fully respond to Interrogatory No. 12. Accordingly, the Court grants the instant Motion as to Interrogatory No. 12, but only to the extent that Defendant Weir must identify, by name, the Chief and Assistant Chief with whom he discussed the factual

allegations of this lawsuit and specify the purpose of the discussions.

*4. Requests for Production to Defendant Weir*

    a. Request No. 1

In Request for Production No. 1, Plaintiff requests that Defendant Weir produce copies of all documents concerning and/or relating to the canine's training. Defendant Weir responded to the Request by purportedly producing all documents concerning or relating to the canine's training. In the instant Motion, Plaintiff represents that Defendant Weir failed to produce documents related to the canine's certification as a drug-detection dog. In his response brief, Defendant Weir represents that he has produced all documents in his possession, custody, or control and that production is complete on this discovery request. Nonetheless, Plaintiff requests that Defendant Weir clarify whether responsive documents exist and, to the extent that he has been unable to obtain them, specify what steps he took to obtain the documents.

Accordingly, the Court grants the instant Motion as to Request for Production No. 1 and orders Defendant Weir to produce responsive documents showing the canine's certification as a drug-detection dog, to the extent that such documents exist, and, to the extent no such documents exist, specify what steps he took to try to obtain the documents.

    b. Request No. 2

In Request No. 2, Plaintiff requests that Defendant Weir produce copies of all video recordings showing the specific final behavioral response the canine was formally trained to exhibit when it indicates the presence of an illegal controlled substance. Defendant responded to the Request by providing that he possesses no video recordings of the canine's final behavioral response. In the instant Motion to Compel, Plaintiff argues that Defendant Weir has failed to indicate whether such responsive material is within his "possession, custody or control", he does not deny having custody of recordings showing the canine's final behavioral response that it was

*formally* trained to exhibit, and he previously provided through affidavit testimony that the canine allegedly indicated the presence of drugs in the Plaintiffs' vehicle and this event was recorded. Further, Plaintiff alleges that Defendant Weir makes audio and visual recordings of his traffic stops and can produce the requested video recordings. Accordingly, Plaintiff requests that Defendant Weir produce for inspection and copy all responsive documents and, if no such documents exist, that he indicate under oath that he has no documents in his possession, custody or control.

In his response brief to the instant Motion, Defendant Weir represents that he has no possession, custody or control over any video showing the canine's formally trained final behavioral response indicating the presence of drugs. Further, Defendant represents that he has produced a recording of the incident in this suit, the audio portion of which includes the canine's positive alert.

Accordingly, because Defendant Weir represents that he does not have any responsive video recording in his possession, custody or control, and Plaintiff fails to refute this, the Court denies the instant Motion as to Request No. 2.

c. Request No. 3

In Request No. 3, Plaintiff seeks copies of all documents describing the specific final behavioral response the canine was formally trained to exhibit when indicating the presence of an illegal controlled substance. Defendant Weir responded to this request by indicating that he possesses no such documents. Plaintiff requests that he be ordered to indicate whether he has such documents in his "possession, custody or control" in accordance with Rule 34(a)(1).

Accordingly, the Court grants the instant Motion to Compel as to Request No. 3 and orders Defendant Weir to indicate whether he has responsive documents in his possession, custody or control, and to the extent that such documents exist, he shall produce them.

d. Request No. 4

In Request No. 4, Plaintiff requests the same information that he requests from the City of

Plymouth in his Request for Production No. 40 to the City of Plymouth which, as discussed above in the Opinion and Order, the Court has ordered to be disclosed. Accordingly, the Court grants the instant Motion as to Request No. 4 and orders Defendant Weir to disclose documents, including audio and/or video recordings, related to his training as a certified dog handler and any certificate indicating successful completion of the training, if such responsive materials exist. If no such documents exist, Defendant is to provide so, in the same manner as the Court has instructed regarding Requests for Production to City of Plymouth Nos. 16-21.

      e. Request No. 6

In Request No. 6, Plaintiff requests that Defendant Weir produce all documents concerning and/or relating to the canine's field performance. This Request seeks the same documents that Plaintiff requests from the City of Plymouth in Request No. 36. For the same reasons stated in this Opinion and Order related to Request for Production to the City of Plymouth No. 36, the Court grants the instant Motion as to Request No. 6.

Accordingly, the Court grants the instant Motion to the extent that Plaintiff requests that Defendant produce documents related to the canine's field performance from the date that it was first used by the Plymouth Police Department until the present. To the extent that such documents contain irrelevant personal information, as discussed in the portion of this Opinion and Order addressing the Motions for Protective Order, the Court orders Defendant to redact such information prior to disclosure.

      f. Request No. 7

In Request No. 7, Plaintiff requests copies of all log entries, radio transmissions, MDT transmissions, and/or audio/video recordings which document Defendant Weir's activities during the entire shift he worked on the date of the incidents underlying the instant case. Defendant Weir responded by purportedly producing relevant materials and objected to other materials from the shift

as being irrelevant and statutorily privileged.

The information sought in this Request is the same information that Plaintiff seeks in Request for Production No. 51 to the City of Plymouth. Given that the Court has granted Plaintiff's Motion to Compel with regard to that Request for Production, for the same reasons provided in this Opinion and Order addressing that Request, the Court does the same with regard to Request No. 7, subject to the same redaction requirements.[12]

g. Requests Nos. 8 and 9

In Requests Nos. 8 and 9, Plaintiff requests copies of all documents concerning and/or relating to all formal or informal allegations of misconduct against Defendant Weir in his capacity as a Plymouth Police Department law enforcement officer, as well as copies of documents concerning and/or relating to disciplinary action taken against him by the Plymouth Police Department. This is the same information that Plaintiff requests of Defendant City of Plymouth in Requests for Production Nos. 45 and 46, and the Court grants the Motion as to Requests Nos. 8 and 9, subject to redaction of irrelevant personal information, as previously discussed in this Opinion

---

[12] Similar to Defendant City of Plymouth's arguments against disclosing the information requested of it in Request for Production No. 51, Defendant Weir fails to explain how the requested information is statutorily privileged.

Further, the Court finds that the information is relevant as Plaintiffs challenge the legal validity of the search in their Complaint and allege that their First, Fourth, and Fourteenth Amendment rights were violated by being wrongfully stopped by Weir and other officers because of their race. Further, Plaintiffs allege that their rights were violated because of improper training and/or supervision related to traffic stops. The requested information may establish whether Defendant Weir was operating a rolling drug-interdiction checkpoint that, as Plaintiffs allege, violates the Fourth Amendment.

Defendant Weir also argues in his response brief to the instant Motion to Compel that Plaintiffs admitted in their rely brief in support of their Motions for Partial Summary Judgment to seeking only to establish liability against the Defendants for the period of time they were not free to leave after the vehicle search was completed and Plaintiff Kevin Miller was convicted of a speeding violation, which makes information as to whether Defendant Weir was involved in a rolling drug checkpoint irrelevant. However, Plaintiffs made their admission solely in regard to their false imprisonment claim, not their § 1983 and *Monell* claims. *See* Pls.' J. Reply in Support of J. Mots. for Partial Summ. J., 13 n. 9. Further, Plaintiff Miller contends that he was not speeding and that the stop was a pretext for a rolling drug checkpoint. Accordingly, the requested information is relevant to the claims at issue in this suit.

and Order.[13]

**CONCLUSION**

Having reviewed the instant Motions, the Court hereby:

(1) **GRANTS in part and DENIES in part** the Defendant, City of Plymouth's Motion to Bifurcate and Defer Discovery or, Motion in the Alternative for Protective Order [DE 72], (a) **GRANTING** the Motion to the extent that it requests that the Court prevent disclosure of the identities of all officers who have worked for the City of Plymouth Police Department from January 1, 1999, until the present, but limiting disclosure to individuals employed as law enforcement officers for the City of Plymouth Police Department at any time from the period of January 1, 2008, through the present, and (b) **DENYING** the Motion as to the other discovery limitations sought and to the extent that Defendant City of Plymouth seeks to bifurcate discovery;

(2) **DENIES** Defendant, John Weir's, Motion for Protective Order [DE 73]**;**

(3) **GRANTS in part and DENIES as moot in part** Plaintiff Kevin D. Miller's First Motion to Compel Discovery Responses from Defendant City of Plymouth [DE 95], (a) **GRANTING** the Motion to the extent that Plaintiff requests that the Court order Defendant City of Plymouth to submit a signed copy of its Interrogatory responses pursuant to Rule 33(b)(5) and compel Defendant City of Plymouth to respond to Interrogatories Nos. 1, 3-5, 7, 11, and 13, and Requests for Production Nos. 16-31, 34-40, and 42-52, subject to the limitations and redaction discussed in this Opinion and Order, and (b) **DENYING as moot** the Motion as to Interrogatory No. 12; and

(4) **GRANTS in part and DENIES in part** Plaintiff Kevin D. Miller's First Motion to

---

[13] Although Defendant Weir originally objected to the Requests as being over broad, he failed to address this objection in briefing or further explain how the Requests are over broad. Accordingly, this argument is waived. *See Beverly,* 2008 WL 45357, at *2.

Compel Discovery Responses from Defendant John Weir [DE 96], (a) **GRANTING** the Motion to the extent that Plaintiff requests that the Court order Defendant Weir to submit a signed copy of his Interrogatory responses pursuant to Rule 33(b)(5), and compel him to respond to Interrogatories Nos. 1-6 and 12, and Requests for Production Nos. 1, 3, 4, and 6-9, subject to the limitations discussed in this Opinion and Order, and (b) **DENYING** the Motion as to Request for Production No. 2.

The Court **ORDERS** Defendants to supplement their discovery responses, in accordance with this Opinion and Order, by **May 31, 2010**.

SO ORDERED this 29th day of April, 2010.

 s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES MAGISTRATE JUDGE

cc:     All counsel of record
        Pro se Plaintiffs