# United States District Court
# Northern District of Indiana
# Hammond Division

| | |
|---|---|
| KEVIN D. MILLER and<br>JAMALIA D. MILLER,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF PLYMOUTH, MARSHALL<br>CNTY. SHERIFF'S DEP'T, JOHN<br>WEIR, individually and in his official<br>capacity as an employee or agent of the<br>City of Plymouth and/or the Plymouth<br>Police Department, NICHOLAS<br>LAFFON, individually and in his<br>official capacity as an employee or<br>agent of Marshall County and/or the<br>Marshall County Sheriff's Department<br><br>    Defendants. | Case No.: 2:09-CV-205 JVB |

## OPINION AND ORDER

Defendant John Weir has moved for a Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) as to Counts VII, VIII, IX, X, XI and XII of Plaintiffs' complaint. (DE 221 at 1.) Previously, Defendant filed a Motion to Dismiss these identical counts. (DE 23 at 1.) The Court denied that motion on April 9, 2010. (DE 118 at 15.) Defendants then moved for reconsideration; the Court denied this as well. (DE 221 at 1.) Plaintiffs respond that Defendant's 12(c) motion is "nothing more than an improper *second* motion to reconsider the Court's denial of [Defendants'] Motion to Dismiss." (DE 231 at 1.) Accordingly, Plaintiffs have jointly filed a Motion to Strike Defendant Weir's 12(c) motion. (*Id.*) For the following reasons, the Plaintiffs' Motion to Strike will be

DENIED.[1] Further, the Defendant's Motion for a Judgment on the Pleadings will also be DENIED.

**A. Facts**

The facts set out in the Complaint are accepted as true for purposes of the 12(c) motion: On May 18, 2008, the Millers, who are African Americans, were driving in their car from Gary, Indiana, to Fort Wayne, Indiana, on U.S. 30. (Compl. ¶10.) At 11:45 p.m. the Millers were stopped at a traffic light at the intersection of U.S. 30 and Oak Road in Plymouth, Indiana. (*Id*. ¶11.) Defendant Officer Weir of the Plymouth Police Department was parked on the shoulder of the intersection in a marked squad car facing eastbound on U.S. 30. (*Id*. ¶12.) His car was located on the same side of the intersection as the Millers. (*Id.*) Officer Weir is a canine officer and had his dog in the car. (*Id*.)

While the Millers were at the intersection, Marshall County Sheriff Deputy Laffoon pulled up behind the Millers in a marked squad car. (*Id*. ¶13.) Mr. Miller had seen through his rearview mirror that Deputy Laffoon had turned onto the eastbound lane of U.S. 30 less than a mile from the intersection. (*Id*.)

After the traffic signal turned green, the Millers proceeded through the intersection followed by Laffoon and Weir (*Id.* ¶15.) Deputy Laffoon then activated his emergency lights and the Millers pulled their car onto the shoulder of U.S. 30 and turned off the engine. (*Id*.) Laffoon and Weir got out of their cars and approached the Millers' car. (*Id*. ¶16.) Both officers were in full uniform and armed. (*Id*.)

---

[1] Although Defendant's arguments somewhat overlap its previous arguments in its Motion to Dismiss, Defendant's Motion and brief in support thereof is not so redundant, immaterial, impertinent, or scandalous as to warrant being stricken from these proceedings. *See* Fed. R. Civ. P. 12(f).

Laffoon told Mr. Miller that he stopped them for speeding. (*Id.* ¶17.) Laffoon said that Mr. Miller had been traveling at seventy five miles per hour in a sixty miles per hour zone. (*Id.*) Mr. Miller, however, believed that the stop was a pretext for a rolling drug checkpoint. (*Id.* ¶18.) Mr. Miller avers that he had not been speeding, that Laffoon was coming from the opposite direction of Mr. Miller and had not been following him, and the alleged speeding occurred three miles from the location of the stop. (*Id.*) Regardless, Mr. Miller surrendered his driver's license and vehicle registration and requested to see the radar display showing his speed. (*Id*. ¶19.) Laffoon and Weir then conferred and returned to their cars. (*Id.*)

Shortly thereafter, Weir returned with his police dog and walked it around the Millers' car. (*Id.* ¶20.) Weir approached the driver's door with the dog tethered on a leash and ordered Mr. Miller from the car. (*Id.*) Mr. Miller got out but was apprehensive of the dog. (*Id*. at ¶21.) Officer Weir permitted the dog to approach and sniff Mr. Miller while Mr. Miller was "sandwiched" between the dog and his vehicle. (*Id.*) As Mr. Miller attempted to shield himself from the dog, Weir instructed him not to move because the dog "will bite your ass." (*Id.*) Mr. Miller was then instructed to stand at a location about ten feet behind the Millers' car. (*Id.* ¶23.)

Weir then opened the front driver's side door of the Millers' vehicle and prompted the dog to enter the vehicle. (*Id.*) Mrs. Miller was still in the vehicle in the front passenger's seat and became afraid of the dog. (*Id.*) Both of the Millers repeatedly objected to the search and Weir's use of his dog. (*Id*. ¶24.) When Weir did not cease, Mr. Miller objected to Laffoon. (*Id*. ¶26.) At that point, Weir approached Mr. Miller from behind and forcibly handcuffed him. (*Id.*) Mr. Miller asked if he was under arrest and Weir responded that he was being "detained." (*Id*.) While this was ongoing, Mrs. Miller remained in the car.

3

After Weir handcuffed Mr. Miller, three additional uniformed and armed law enforcement officers arrived on the scene, including Defendant Officer Carter. (*Id*. ¶28)

Weir ordered Mrs. Miller to get out, grabbed her jacket by the lapel pulling it open and visually searched inside the jacket. (*Id*. ¶29.) Mrs. Miller was frightened, crying, and visibly shaken by what was transpiring. (*Id*.) Weir and Laffoon then searched the passenger and luggage compartments of the Millers' vehicle. (*Id*. ¶30.) They searched the Millers' luggage, briefcases, book bags, dirty laundry, and all other personal effects. (*Id*.)

While this search was being conducted, Officer Carter stood alongside the Millers. (*Id*. ¶31.) Carter told Mr. Miller that he would remain handcuffed as long as he continued to verbally object to the search. (*Id*.) About forty to forty-five minutes after the traffic stop had been initiated, and after the search of the Millers' vehicle produced no illegal drugs, weapons, or contraband, Weir approached Mr. Miller, who was still handcuffed, and searched through his pants pockets. (*Id*. ¶33.) No illegal drugs, weapons, or other contraband were found on Mr. Millers' person. (*Id*. ¶34.) At some point, the Millers were released from their detention and permitted to proceed on their way.

Several days after the traffic stop, Mr. Miller returned to Plymouth to obtain copies of the police report associated with this incident. (*Id*. ¶46.) Mr. Miller was advised by both the City and the County that no incident report existed detailing these events. (*Id*.)

**B. Legal Standard for a 12(c) Motion**

Under Rule 12(c), a party can move for judgment on the pleadings after the filing of both the complaint and answer. Fed. R. Civ. P. 12(c). "A court will grant a Rule 12(c) motion only when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material

issues of fact to be resolved." *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 718–19 (7th Cir. 2002) (citation omitted). A court will take all the alleged facts in the complaint as true, drawing all reasonable inferences in favor of the non-moving party. *See Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citing *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004)). In a Rule 12(c) motion, courts use the same standard of review as employed in a Rule 12(b)(6) Motion to Dismiss. *Id.* (citing *Guise v. BMW Mortgage, LLC*, 377 F.3d 795, 798 (7th Cir. 2004)).

**C. Discussion**

**(1)** *State Law Claims*

Indiana Code Section 34-13-3-5(c) allows plaintiffs to sue government employees in their personal capacities if their conduct was outside the scope of employment and, amongst other possibilities, either "malicious" or "willful and wanton." Ind. Code § 34-13-3-5-(c)(3)–(4) (2010). The complaint must also "contain a reasonable factual basis supporting these allegations." *Id.* at (c). In their complaint, Plaintiffs assert that Defendant acted in an egregious manner and behaved with "malicious" and "willful and wanton" disregard for the Plaintiffs' constitutional rights. (Compl. ¶41.) To support this, Plaintiffs allege, and sufficiently detail, numerous instances of misconduct that Defendant engaged in. (*See id.* ¶¶24, 38, 41.) Plaintiffs are conducting discovery to validate these assertions and determine if Defendant was acting in the scope of his employment. The Court has set the discovery cut-off date as May 2, 2011. (DE 228.)

**(2)** *Defendant's Arguments*

Defendant first concedes that Plaintiff has "plead sufficiently in the alternative a claim against Weir in his personal capacity" within the parameters of Indiana Code Section 34-13-3-5(c). (DE 222 at 2.) However, Defendant argues that a recent decision by the Indiana Court of Appeals and Supreme Court of Indiana—*Wilson v. Isaacs*—interpreting the Indiana Tort Claims Act (ITCA) supports his argument that a Motion for a Judgment on the Pleadings is proper because Indiana Code § 34-13-3-5(b) "bars that alternative pleading." (DE 222 at 2–3); *see* 929 N.E.2d 200 (Ind. 2010). Defendant additionally contends that a recent decision in this Court—*McAllister v. Town of Burns Harbor*—supports his interpretation of ITCA and allows a 12(c) motion in his favor. (DE 222 at 3–4); *see* 693 F. Supp. 2d 815 (N.D. Ind. 2010).

Defendant's arguments fail for several reasons. *Wilson v. Isaacs* involves a plaintiff who claimed that a deputy improperly tasered him three times, two of which occurred after he was already lying on the ground. *Wilson*, 929 N.E.2d at 201. The Supreme Court's opinion does not discuss pleadings and their relation to ITCA; rather, it clarifies why a law enforcement official's use of excessive force during an arrest fails to insulate the government from damages under the "enforcement of law" immunity provision within ITCA. *See id*. at 201–04. Also, the opinion only briefly mentions that the appellate court denied plaintiffs' claims against the deputy-defendant in his personal capacity. *Id.* at 201 n.1. The Court did not thoroughly investigate this issue because the plaintiffs did not contest this portion of the appellate decision. *Id*. The ruling, therefore, does not directly support Defendant's argument that he is entitled to a 12(c) judgment.

An examination of the appellate court's decision in *Wilson v. Isaacs* also fails to support the Defendant's contentions. First, it is notable that *Wilson* had undergone the necessary factual development to allow a summary judgment decision, *see Wilson v.*

*Isaacs*, 917 N.E.2d 1251, 1255 (Ind. Ct. App. 2009), *aff'd in part*, *rev'd in part*, 929 N.E.2d 200 (Ind. 2010), whereas discovery in this case will not end until May 2011; hence, *Wilson* is distinguishable in this regard. Moreover, the appellate court noted that the plaintiffs sought to find the deputy-defendant personally liable because his "actions were 'outside the scope of his employment.'" *Id*. at 1258. The plaintiffs argued that they could hold the deputy personally liable because "nowhere in their complaint did they allege" that the deputy was acting in the scope of his employment. *Id*. Instead, the plaintiffs alleged that the deputy "acted as an agent" for the county sheriff when the unjustified tasering occurred. *Id.* Ultimately, though, the court concluded that the complaint "did not contain a reasonable factual basis supporting [its] allegations" and "the undisputed evidence established that Deputy Craven was acting within the scope of his employment." *Id.* Notably, like the Indiana Supreme Court's opinion, the appellate opinion does not discuss a plaintiff's ability to alternatively plead claims. *See id*. at 1256–58.

Unlike *Wilson*'s plaintiffs, Plaintiffs have provided a reasonable factual basis to support their allegations as required by Indiana Code § 34-13-3-5(c). (Compl. ¶¶38, 41.) Further, by alternatively claiming that Defendant acted outside of the scope of his employment and in a "malicious" or "willful and wanton" way, Plaintiffs further distinguish their case from *Wilson*'s plaintiffs, who argued the deputy was acting as an agent for the county. (*Id*.); *see* Ind. Code § 34-13-3-5(c)(3)–(4) (2010). Thus, because the appellate court's opinion in *Wilson* did not address these portions of ITCA, it does not entitle Defendant to his 12(c) motion. *See Wilson*, 917 N.E.2d at 1251–58.

Defendant's reliance on this Court's recent decision in *McAllister v. Town of Burns Harbor* is also misplaced. (DE 222 at 3–4); *see* 693 F. Supp. 2d 815 (N.D. Ind. 2010).

7

*McAllister* involved a plaintiff who caused a car crash after he went into diabetic shock. *McAllister*, 693 F. Supp. 2d at 819. Believing the plaintiff was drunk due to of his level of unresponsiveness, the defendant officer forcefully removed plaintiff from the car and handcuffed him; during this time, plaintiff was injured. *Id.* at 819–20.

*McAllister* is distinguishable for two key reasons. First—as in *Wilson*—the *McAllister* record was developed to the point where this Court could properly undertake a summary judgment analysis. *Id.* at 822–23. Second, *McAllister*'s plaintiff "specifically allege[d] (and Defendants admit[ed]) that 'at all times relevant herein Defendant Price was employed by the Town of Burns Harbor and . . . was acting within the course of his employment.'" *Id.* The undisputed facts also confirmed that Defendant Price was acting within the scope of his employment. *Id.* at 823. However, unlike the plaintiff in *McAllister*, Plaintiffs have sufficiently alleged that Defendant engaged in conduct outside of the scope of his employment.

**D. Conclusion**

The Defendant's Motion for a Judgment on the Pleadings is DENIED (DE 221). Additionally, the Plaintiffs' Motion to Strike is DENIED (DE 231).

SO ORDERED on November 16, 2010.

    S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE