**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| KEVIN D. MILLER and JAMILA D. MILLER, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:09-CV-205-JVB-PRC |
| | ) | |
| CITY OF PLYMOUTH, et al., | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on (1) Plaintiffs' Joint Motion to Strike the Plymouth Defendants' Discovery Responses at Docket Nos. 258 and 259 [DE 320]; (2) Plaintiff Kevin D. Miller's Fourth Motion to Compel Discovery Responses from Defendants City of Plymouth and John Weir [DE 321]; and (3) Plaintiff Jamila D. Miller's Motion to Compel the Plymouth Defendants' Compliance in Discovery (Fifth Motion to Compel) [DE 323], all filed on February 28, 2011. The motions are fully briefed and ripe for ruling.

**ANALYSIS**

**A. Plaintiffs' Joint Motion to Strike the Plymouth Defendants'**
**Discovery Responses at Docket Nos. 258 and 259**

Plaintiffs ask the Court to strike the Plymouth Defendants' responses to Mr. Miller's Fourth Set of Requests for Production on the grounds that, in violation of Federal Rules of Civil Procedure 6(b)(1)(B) and 34(b)(2), the responses were served and filed after the prescribed deadline without the Court's permission.

Mr. Miller served document requests on the Plymouth Defendants on September 15, 2010, making the responses due on or before October 18, 2010. On September 22, 2010, counsel for the Plymouth Defendants wrote to Mr. Miller in an attempt to resolve the discovery dispute. Therein, he advised Mr. Miller of Defendants' objections regarding the discovery requests and advised that

the remaining documents were going to be gathered. On November 2, 2010, Mr. Miller wrote to counsel regarding the Requests for Production, noting that the responses were overdue. On November 8, 2010, counsel responded, repeating the objections and advising that the Plymouth Police Department was making a good faith effort to respond to the remainder of the request. On November 16, 2010, Mr. Miller wrote to counsel, indicating that he believed he was being challenged to file a fourth motion to compel. On November 22, 2010, counsel responded that he was not challenging Mr. Miller to file a motion. The Plymouth Defendants did not serve their discovery responses on Mr. Miller or file the discovery with the Court until November 22, 2010 (35 days late).

The Plymouth Defendants did not file a motion with the Court requesting permission to file their untimely discovery after the October 18, 2010 deadline. Local Rule 6.1(a) provides:

> In every civil action pending in this court in which a party wishes to obtain an initial extension of time not exceeding twenty-eight (28) days within which to file a . . . response to a written request for discovery or request for admission, the party shall contact counsel for the opposing party and solicit opposing counsel's agreement to the extension. In the event opposing counsel does not object to the extension or cannot with due diligence be reached, the party requesting the extension shall file a notice with the court reciting the lack of objection to the extension by opposing counsel or the fact that opposing counsel could not with due diligence be reached. No further filings with the court nor action by the court shall be required for the extension. In the event the opposing counsel objects to the request for extension, the party seeking the same shall file with the clerk a formal motion for such extension and shall recite in the motion the effort to obtain agreement. In the absence of the recitation, the court, in its discretion, may reject the formal motion for extension.

Ind. N.D. Local Rule 6.1(a). Federal Rule of Civil Procedure 6(b)(1)(B) provides that, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Defendants argue that Plaintiffs have failed to establish that they are subject to any prejudice by the late filing by five weeks of the discovery responses. Defendants

explain that their objections to the discovery requests were matters of attorney-client privilege and work-product privilege for correspondence between counsel and the Assistant Chief/Chief for the Plymouth Police Department and Defendant John Weir. The objections also included billing statements and letters between counsel and the City's insurance carrier.

Without condoning Defendants' failure to obtain formal agreement from Mr. Miller or to file a timely and proper motion with the Court for an extension of time to respond to discovery, in light of the ongoing correspondence between the parties from the time the discovery was served to the time the responses were served and filed, given that Plaintiffs waited three months to file the instant motion after receiving the untimely discovery, and in the interests of justice and consistent with the Court's preference for ruling on the merits, the Court finds that the delay in responding to the Motion to Strike was the result of excusable neglect and that Plaintiffs have not been prejudiced by the delay. In the following section, the Court fully addresses Mr. Miller's Motion to Compel related to the discovery responses served on November 22, 2011. Accordingly, the Court **DENIES** the motion.

### B. Plaintiff Kevin D. Miller's Fourth Motion to Compel Discovery Responses from Defendants City of Plymouth and John Weir

In the instant motion, Plaintiff Kevin D. Miller asks the Court for several forms of relief related to the Plymouth Defendants' responses to Mr. Miller's discovery requests. As noted in the previous section, Mr. Miller served his Fourth Set of Requests for Production on Defendants City of Plymouth and John Weir on September 15, 2010. Responses were belatedly filed on November 22, 2010. The Court considers each form of relief in turn.

*1. Privilege Objections*

Mr. Miller asks the Court to deem the Plymouth Defendants' "privilege" objections to Mr. Miller's Fourth Set of Requests for Production waived because (a) the responses were untimely; (b) the responses should be stricken because Defendants did not file a motion or obtain permission to serve untimely discovery responses after the deadline passed; (c) Defendants provided testimony in open court concerning and/or relating to the substance of the privileged communications; and/or (d) Defendants failed to produce a privilege log as required by Rule 6(b)(5)(A)(ii). In the alternative, Mr. Miller asks the Court to overrule the privilege objections based on specific reasons offered for each assertion of privilege. Finally, if the Court does not deem the objections waived, Mr. Miller asks the Court to Order the Plymouth Defendants to immediately file and serve a privilege log, prepared in accordance with Federal Rule of Civil Procedure 26(b)(5)(A)(ii).

a. Waiver

1) Untimely responses:

In Part A above, the Court has already found that the Plymouth Defendants' failure to file the discovery responses by the October 18, 2010 deadline is excused. The Court declines to find the privilege objections waived on this basis.

2) Failure to file a motion to file untimely responses:

Similarly, although Defendants failed to file a motion to extend the time to respond to discovery prior to the October 18, 2010 deadline, the Court has found that the delay is excused. Counsel for Defendants was in communication with Mr. Miller throughout that period, beginning with correspondence dated September 22, 2010, and continuing through the service of the discovery responses. The September 22, 2010 correspondence articulated the privilege objections sufficient

to avoid waiver, even though it was insufficient to constitute a formal response under Local Rule 26.1(a). The Court declines to find the privilege objections waived on this basis.

3)     Open-court testimony:

Mr. Miller argues that, to the extent communications between the Plymouth Defendants and their attorney were privileged, such privilege was waived when the Plymouth Defendants provided testimony in open court concerning the substance of certain specific privileged communications with their attorney. The Plymouth Defendants do not respond to this argument.

Mr. Miller identifies two areas of testimony in support. First, Mr. Miller lists Officer Weir's testimony at the December 16, 2010 hearing that he was "not told to save my videos, no, if that's what you're asking . . . . I was not told to save traffic stops." Second, Mr. Miller notes that the Plymouth Defendants' attorney asked Chief Cox, Assistant Chief Bacon, and Officer Weir questions that started with "Did you ever tell me that . . . ." and each question was answered. Thus, Mr. Miller argues that counsel put privileged communications at issue in open court. Mr. Miller argues that the Plymouth Defendants cannot publicly disclose certain information that they believe beneficial to their cause and, thereafter, fail to disclose the rest because such conduct acts as a surrender of the privilege, citing *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003). Mr. Miller is correct that any privilege as to the statements revealed in open court are waived. However, unlike in *Burden-Meeks*, none of the documents for which Defendants assert the privilege were produced during the hearing nor was the testimony in reference to any of the withheld documents. Accordingly, Defendants have not waived their privilege objections based on the in-court testimony on December 16, 2010.

4)       Failure to produce a privilege log:

The Plymouth Defendants objected to 27 of 58 document requests on the grounds that the requested materials were protected under the attorney-client privilege and/or work product doctrine but did not produce a privilege log. Mr. Miller asks the Court to find the privilege objections waived because the Plymouth Defendants failed to produce a privilege log.

Federal Rule of Civil Procedure 26(b)(5)(A)(ii) requires that a privilege log must "describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). "The mere assertion of a privilege is not enough; instead, a party that seeks to invoke the attorney-client privilege has the burden of establishing all of its essential elements." *U.S. v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003); *see also Hobley v. Burge*, 433 F.3d 946, 947 (7th Cir. 2006). "An assertion of privilege therefore must be made on a document-by-document basis." *In re Grand Jury Proceedings*, 220 F.3d 568, 572 (7th Cir. 2000). "A party who invokes any privilege [ ] must . . . provide to the opposing party a privilege log containing the following information for each document not disclosed: (1) the name and job title or capacity of the author(s)/originator(s); (2) the names of all person(s) who received the document or a copy of it and their affiliation (if any) with the producing party; (3) a general description of the document by type (e.g., letter, memorandum, report); (4) the date of the document; and (5) a general description of the subject matter of the document." *In re Bridgestone/Firestone, Inc., ATX. ATX II*, 129 F. Supp. 2d 1207, 1218-19 (S.D. Ind. 2001). A timely and adequate privilege log is required by the federal rules, and the failure to serve an adequate and timely privilege log may

result in a waiver of any protection from discovery. *See Babych v. Psychiatric Solutions, Inc.*, 271 F.R.D. 603, 608 (N.D. Ill. 2010).

Defendants' only justification for not providing a timely and adequate privilege log is that Mr. Miller's requests for production of documents were so specific that the documents sought in each request allegedly could not be described in any greater detail through a privilege log. This is not the case. Most of the objected-to requests for production follow this format: "Produce all correspondence, including e-mails, addressed to the City of Plymouth from any agent or representative of Steven P. Polick & Associates, P.C., including Steven P. Polick himself, concerning and/or relating to this case." Def. Resp. to 4th Set of Req. for Prod. of Docs., Req. No. 104, p. 3 [docket entry 258]. Mr. Miller's request does not include any of the required elements of a privilege log.

Nevertheless, on March 23, 2011, over five months after it was due and in conjunction with the instant response brief, the Plymouth Defendants provided a privilege log containing 146 line items. The privilege log is untimely. The privilege log is also insufficient because it does not identify persons by name or title when referencing correspondence exchanged with the Plymouth Defendants' insurance carrier. The privilege log lists the documents in a number list without identifying which Request for Production each document is responsive to. Finally, the privilege log does not specify which of the attorney-client privilege or work product privilege is asserted for each listed document in the log. The Court rejects Mr. Miller's general concern that the description in the privilege log of several documents as discussing "strategy" does not constitute privileged communications.

Mr. Miller argues that the belated production of a privilege log does not revive a waived privilege. Although the Court is concerned by the Plymouth Defendants' flagrant disregard for Rule 26(b)(5), the extensive delay occasioned by Defendants in providing the privilege log rendering it untimely, the inadequacies of the privilege log, and the failure to identify which Request for Production each document is responsive to, the Court at this time declines to find the privileges generally waived on this basis under the circumstances. The Plymouth Defendants did specifically assert the privileges as to each applicable Request for Production on November 22, 2010. In addition, most of the objected-to Requests for Production involve correspondence to and from counsel for the Plymouth Defendants, suggesting that many of the documents may, in fact, be privileged.

Therefore, the Court **DENIES** the motion to the extent that it seeks a broad waiver of the privilege objections but **ORDERS** the Plymouth Defendants to **PRODUCE** an amended privilege log in full compliance with Federal Rule of Civil Procedure 26(b)(5) and the elements set forth above that also (1) identifies persons by name or title when referencing correspondence exchanged with the Plymouth Defendants' insurance carrier; (2) correlates each document listed in the privilege log with the Request for Production that it is responsive to, organized by Request for Production number; and (3) specifies which of the attorney-client or work product privileges is asserted for each listed document in the log, on or before **May 20, 2011**.

Mr. Miller further argues that defense counsel violated Federal Rule of Civil Procedure 26(g)(1)(A) by signing the discovery response without also providing a privilege log. Having considered Rule 26(g)(1)(B), which addresses discovery requests and the standard of Rule 26(g)(3), the Court declines to impose sanctions on Defendants' counsel at this time.

b.      Individual Objections

      1)      Requests for Production Nos. 96 and 97 propounded upon the City;
                Request for Production No. 23 propounded upon Officer Weir

In these requests, Mr. Miller asks the Plymouth Defendants to produce the pages that they

withheld from Officer Weir's personnel file and records related to the canine's field performance.

In their March 23, 2011 response brief, Defendants respond that they have forwarded the missing

pages to CJ Printing for copying and production to Mr. Miller. Therefore, the Court **GRANTS** the

Motion as to these requests and **ORDERS** that the documents be produced to Mr. Miller on or

before **May 20, 2011**, if they have not already been produced.

      2)      Request for Production No. 98 Propounded Upon the City

In this request, Mr. Miller asks the City to produce all documents contained in its insurance

carrier's file relating to this case. The City objects on the basis that the documents are protected

from disclosure under the attorney-client and work product privileges.

      a.      Attorney-client privilege

Federal Rule of Evidence 501 provides that "the privilege of a witness, person, government,

State, or political subdivision thereof shall be governed by the principles of the common law as they

may be interpreted by the courts of the United States in the light of reason and experience." Fed.

R. Evid. 501. Although federal courts apply the state law of privilege when jurisdiction is based in

diversity, *see id.*, when the principal claim in federal court arises under federal law and the sought-

after information is also relevant to pendant state claims, the federal common law of privileges

applies, *Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1987); *Evans v.

City of Chi.*, 231 F.R.D. 302, 310 (N.D. Ill. 2005). Plaintiffs' principal complaint is brought under

42 U.S.C. § 1983, alleging constitutional violations of Plaintiffs' rights under the First, Fourth, and

Fourteenth Amendments to the United States Constitution. Plaintiffs also allege Indiana state law claims of false imprisonment, assault and battery, invasion of privacy, and intentional or negligent infliction of emotional distress. Because Plaintiff's principal claims arise under federal law, the federal common law of privileges applies (the privilege recognized by Indiana courts under Indiana law is not sufficient to preclude discovery of the insurance file in this case, *see, e.g. Benvenuto v. Action Marine, Inc.*, 91 C 7365, 1992 WL 194649, at * 1 (N.D. Ill. Aug. 6, 1992) (finding that the Illinois privilege does not apply); *Richey v. Chappell*, 594 N.E.2d 443, 447 (Ind. 1992) (recognizing an insurer-insured privilege under Indiana law)).

Turning to the federal common law on privilege, "[f]ederal courts have never recognized an insured-insurer privilege as such." *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Tr. Corp.*, 5 F.3d 1508, 1514 (D.C. Cir. 1993); *see also Pearson v. Miller*, 211 F.3d 57 (3d Cir. 2000) (citing *Linde*); *Pietrangelo, II v. Alvas Corp.*, No. 5:09-CV-68, 2010 WL 3323729, at *1 (D. Vt. Apr. 23, 2010) (quoting *Linde*); *Sowell v. Dominguez*, 2:09cv47, 2010 WL 4974558, at *3 (N.D. Ind. Dec. 1, 2010) (noting that the insurer-insured privilege has not been recognized by federal courts); *Aiena v. Olsen*, 194 F.R.D. 134, (S.D.N.Y. 2000) (quoting *Linde*). In *Linde*, the court "firmly reject[ed] any sweeping general notion that there is an attorney-client privilege in insured-insurer communications," but recognized in dicta that

> where the insured communicates with the insurer for the express purpose of seeking legal advice with respect to a concrete claim, or for the purpose of aiding an insurer-provided attorney in preparing a specific legal case, the law would exalt form over substance if it were to deny application of the attorney-client privilege. However, a statement betraying neither interest in, nor pursuit of, legal counsel bears only the most attenuated nexus to the attorney-client relationship and thus does not come within the ambit of the privilege.

5 F.3d at1515; *see Ready v. Grafton Ferry Boat Co., Inc.*, 2009 WL 3258183 (S.D. Ill. Oct. 8, 2009) (discussing *Linde*'s narrow extension of the attorney-client privilege). In the wake of *Linde*, several district courts have extended the attorney-client privilege "to the disclosure by an insured to its carrier of 'facts required to show potential liability of the insured' prior to the carrier acknowledging a duty to defend" on the basis that the disclosure is made "'in pursuit of legal representation.'" *Aiena*, 194 F.R.D. at 136 (quoting *Am. Special Risk Ins. Co. v. Greyhound Dial Corp.*, No. 90 Civ. 2066, 1995 WL 442151 (S.D.N.Y. July 26, 1995) (quoting *Linde*, 5 F.3d at 1515)); *see also Pietrangelo*, 2010 WL 3323729, at * 1 (extending limited attorney-client privilege); *Calabro v. Stone*, 225 F.R.D. 96, 98 (E.D.N.Y. 2004) (same).

Although not argued by the City, the Court recognizes this narrow application of the federal common law attorney-client privilege. While the City's insurance carrier's file is not broadly protected by any insurer-insured privilege, the Court **GRANTS** the City **LEAVE** to include in its amended privilege log, due on **May 20, 2011**, the assertion of this narrow extension of the attorney-client privilege as to any disclosure by the City to its insurance carrier of facts required to show potential liability of the insurance carrier prior to the carrier acknowledging a duty to defend, or in other words, disclosures made in pursuit of legal representation.

         b.     <u>Work product privilege</u>

The work product privilege is "distinct from and broader than the attorney-client privilege." *Boyer v. Gildea*, 257 F.R.D. 488, 490 (N.D. Ind. 2009); *United States v. Nobles*, 422 U.S. 224, 238 n. 11 (1975). The privilege is embodied in the Federal Rules of Civil Procedure, which prohibit discovery of documents "prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or

agent)." Fed. R. Civ. P. 26(b)(3)(A). However, subject to Rule 26(b)(4) addressing the trial preparation of experts, the materials may be discovered if "(i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.*

The threshold inquiry is whether the documents sought to be protected were prepared in anticipation of litigation or for trial. *Blinks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983); *Gingerich v. City of Elkhart Probation Dept.*, – F.R.D. –, – , 2001 WL 556798, at * 5 (N.D. Ind. Feb. 8, 2011). "The mere fact that litigation does eventually ensue does not, by itself, cloak material prepared by an attorney with protection of the work product privilege." *Blinks*, 709 F.2d at 1118. In the context of an insurance file, "[w]hile much of the paperwork generated by insurance companies is prepared with an eye toward a possible legal dispute over a claim, it is important to distinguish between 'an investigative report developed in the ordinary course of business' as a precaution for the 'remote prospect of litigation' and materials prepared because 'some articulable claim, likely to lead to litigation . . . ha[s] arisen.' " *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 977 (7th Cir. 1996) (quoting *Blinks*, 709 F.2d at 1120).

Arguing that the insurance company's entire file was prepared in anticipation of litigation in this instance, the City notes that "[a]ffidavits filed with this Court have clearly established that at the time of the incident, this Plaintiff, Kevin Miller, indicated that he would be filing suit. All of the officers present recognized the potential threat and took steps to 'cover their asses.'" Def. Resp., p. 8. The City represents that the insurance carrier's file on this claim begins with the filing of the Complaint by the Plaintiff. "Everything included in that file was produced subsequent and therefore in respect to this litigation." Mr. Miller disputes the City's representation that the insurance carrier's

file began with the filing of the Complaint in this case because Plaintiffs filed a Tort Claim Notice on October 15, 2008, which the insurer responded to nine months prior to the filing of Plaintiffs' Complaint. Given Mr. Miller's threats of litigation at the scene of the incident and his filing of a Tort Claim Notice, there is no question but that the insurance company's file was prepared in the anticipation of litigation and with respect to threatened litigation.

Accordingly, the Court **FINDS** that the work product privilege protects the entire insurance carrier's file from discovery under the circumstances in this case and that Mr. Miller has not made a sufficient showing under Rule 26(b)(4)(2) to overcome the privilege. Nevertheless, the Court **ORDERS**, consistent with Part B.1.a.4 of this Order, that the City **INCLUDE** in its amended privilege log each of the documents withheld from the insurance carrier's file, listed separately, clearly identified, and containing all other required document-specific information in the log.

                c.    <u>Conclusion</u>

Accordingly, finding that the file is protected by the work product privilege, the Court **DENIES** the motion as to the request for the insurance carrier's file.

                3)    Request for Production No. 99 Propounded Upon the City

Mr. Miller asks the City to produce its attorney's billing statements for services rendered in connection with this case. The City has asserted the attorney-client and work product privileges. Mr. Miller seeks the billing statements to verify the completeness of the Plymouth Defendants' disclosures and privilege log. He further argues that because the billing statements are made in the normal course of business they are not protected by the work product doctrine and that any attorney-client privileged matter can be redacted. The City responds that a redacted billing statement would simply identify the date the service was performed, the initials of the responsible party, the hourly

rate, the hours and the rate charged, and the total amount and that the description of services would be redacted as privileged. Thus, Mr. Miller would be left simply with a list of charges for time by counsel and staff. The Court finds that the billing statements fall within the attorney-client privilege and, if produced, would be heavily redacted. Moreover, at this stage of the litigation, when attorney fees are *not* at issue, the relevance of the request is too attenuated to compel production of the documents. The Court **DENIES** the motion as to this request.

4) Requests for Production Nos. 104-107 and 112-115 Propounded Upon the City; Requests for Production Nos. 24 and 26 Propounded Upon Weir

Mr. Miller asks the City and Officer Weir to produce all correspondence exchanged between the Plymouth Defendants' attorney and the City, the Plymouth Police Department, the insurance carrier, and/or Officer Weir. The Plymouth Defendants object, claiming that the documents are protected from disclosure under the attorney-client and work product privileges.

In Part B.1.a.4 above, the Court has ordered the Plymouth Defendants to produce a proper, detailed privilege log, connecting each withheld document to the Request for Production to which it is responsive and including all information as required by law. In Part B.1.b.2.a, the Court has also articulated the applicable standard for the attorney-client privilege as applied to the insurance carrier.

At this time, the Court **DENIES without prejudice** the motion as to these requests. However, the Court **GRANTS** Mr. Miller leave to file an *amended* Motion to Compel as to Request for Production Nos. 104-107 and 112-115 propounded upon the City and Requests for Production Nos. 24 and 26 propounded upon Officer Weir *after* he has received the Plymouth Defendant's amended privilege log, which is due by **May 20, 2011**. The Court **ORDERS** that any amended Motion to Compel shall be filed on or before **June 3, 2011**, must provide an individual argument

for each Request for Production for which Mr. Miller seeks assistance of the Court, and shall be briefed in accordance with Local Rule 7.1.

>   5)    Requests for Production Nos. 108-111 and 116-118 Propounded Upon the City;
>         Request for Production No. 25 Propounded Upon Weir

Mr. Miller asks the Plymouth Defendants to produce all correspondence generated by their attorney that was *copied to* the City, the Plymouth Police Department, the insurance carrier, and Officer Weir. The Plymouth Defendants object based on the attorney-client and work product privileges.

As noted in the previous section, the Court has ordered in Part B.1.a.4 above that the Plymouth Defendants produce a proper, detailed privilege log, connecting each document to the Request for Production to which it is responsive and including all information as required by law. The Court has also articulated the applicable standard for the attorney-client privilege as applied to the insurance carrier in Part B.1.b.2.a. of this Order.

At this time, the Court **DENIES without prejudice** the motion as to these requests. However, the Court **GRANTS** Mr. Miller leave to file an *amended* Motion to Compel as to Request for Production Nos. 108-111 and 116-118 propounded upon the City and Request for Production No. 25 propounded upon Officer Weir *after* he has received the amended privilege log, which is due on **May 20, 2011**. The Court **ORDERS** that any amended Motion to Compel shall be filed on or before **June 3, 2011**, must provide an individual argument for each Request for Production for which Mr. Miller seeks assistance of the Court, and shall be briefed in accordance with Local Rule 7.1.

6)      Request for Production No. 119, 120, and 126 Propounded Upon the City

In Request for Production No. 119, Mr. Miller asks the City to produce all correspondence, including emails, received by the Plymouth Defendants' attorney from Vohne Liche Kennels since January 1, 2007.  The City responded, "None other than previously produced in response to written discovery."  Mr. Miller represents that the City has not produced any correspondence or emails from Vohne Liche to the Plymouth Defendants' attorney.

In requests Nos. 120 and 126 Mr. Miller asks the City to produce all correspondence, including emails, addressed to Vohne Liche Kennels and American Working Dogs *from* the Plymouth Defendants' attorney since January 1, 2007.  The City objects, claiming the work product privilege.  Mr. Miller argues that the City cannot claim the work product privilege for documents disclosed to third parties.

The City offers to produce any responsive documents for in camera inspection.

Accordingly, the Court **DENIES without prejudice** the Motion to Compel as to these requests but **ORDERS** the City to **PRODUCE** to the Court on or before **May 20 , 2011**, for in-camera inspection all responsive documents that remain listed as privileged in the amended privilege log.

7)      Requests for Production Nos. 27 and 28 Propounded Upon Weir

In these Requests, Mr. Miller asks Officer Weir to produce all correspondence, including emails, exchanged between Officer Weir and the City's insurance carrier concerning and/or relating to the incident giving rise to this lawsuit.  Officer Weir responds that the documents are covered by the attorney-client privilege.  The Court has set forth the standard for the narrow application of the attorney-client privilege to communications with an insurance carrier in Part B.1.b.2.a. of this Order.

The Court **GRANTS** the Motion to Compel as to any documents that do not fall within this definition and **ORDERS** Officer Weir to produce the responsive documents by **May 20, 2011**; however, the Court also **GRANTS** Officer Weir leave to include in his amended privilege log those documents that fall within the narrow application of the attorney-client privilege.

2.      *Compliance with Local Rule 26.2(e)*

Mr. Miller asks the Court to order the Plymouth Defendants to fully comply with Local Rule 26.2(e), which requires that all discovery be filed in a case with a pro se party, such as this one.  The Rule provides: "In pro se litigation, all discovery shall be filed."  Defendants clarify that they have filed each of their responses to Plaintiff's written discovery but have not filed the in excess of 7000 pages of documents responsive to the requests for production of documents.  Although the Court finds that the Rule contemplates that *all* discovery be filed, given the volume of discovery requested and produced *in this case*, the Court **ORDERS** that for requests for production of documents, it is sufficient for the Plymouth Defendants to file the written discovery responses with the Court but not the documents themselves.  The documents shall be served directly on Plaintiffs.  For example, on November 22, 2010, the City filed its written response to Mr. Miller's Fourth Set of Requests for Production but did not file the responsive documents, serving them instead on Mr. Miller.  Should reference to the documents submitted in response to a request for production become necessary for purposes of a motion, the motion-specific documents shall be filed at that time.  Accordingly, the Court **DENIES** the motion as to this request.

As for Mr. Miller's request that the Plymouth Defendants be ordered to mail copies of responsive materials directly to Plaintiffs, the Court presumes that the Plymouth Defendants are complying with the Federal Rules of Civil Procedure and the Northern District of Indiana User

Manual for service of documents on pro se parties not registered for electronic service through CM/ECF and for the service of discovery. Moreover, in this case, arrangements have already been made, which the parties have followed for many months, for the production of documents through a third-party copy company. The motion is **DENIED** as to this request.

3.      *Defendant Weir - Interrogatories Nos. 1-6.*

Mr. Miller asks the Court to order Officer Weir to immediately file full and complete answers to Interrogatories Nos. 1-6. On November 3, 2009, Mr. Miller asked Officer Weir, through these interrogatories, to provide the identity and addresses of certain categories of persons related to traffic stops. On April 29, 2010, the Court generally granted the Motion to Compel as to Interrogatories 1-6, each of which asks for addresses. On May 24, 2010, the Court granted Mr. Miller's Motion for Clarification, clarifying that, in the April 29, 2010 Order, the Court "granted, **without condition or limitation**, Plaintiffs' Motion to Compel Weir's compliance with Interrogatories 1-6, and Interrogatories 1-6 request that Defendant Weir provide the 'identity' of the person as well as the person's 'last known address.'" Order of May 24, 2010 [docket entry 141] (emphasis in original).

Most recently on November 22, 2010, the Court ordered Officer Weir to "respond . . . to each of Interrogatories 1-6 separately and individually by providing . . .the identities and *addresses* of the persons responsive to each interrogatory . . ." by December 17, 2010. The Court granted Officer Weir an extension of time through January 21, 2011, to provide the discovery responses.

On January 26, 2011, Officer Weir filed a response to the discovery. In response to Interrogatory No. 1, he responded:

> My only recollection of those persons that I have stopped for an alleged traffic or vehicular equipment violation since January 1, 2004 is contained in my Canine

> Contact Sheets, Canine Traffic Top Logs and my written reports. I have no
> independent recollection of any additional stops. I am producing Canine Traffic Stop
> Logs in typewritten forms[sic] from January 1, 2010 through November 29, 2010.
> The names of any persons arrested during a traffic top would be contained in the
> printout information previously supplied by the City of Plymouth. I am in the process
> of transcribing my handwritten Canine Contact Sheets, Canine Traffic Stop Logs,
> and my written reports.

In response to Interrogatories Nos. 2-6, he added: "I have no independent recollection of the names

of persons that were specifically submitted to a canine sniff during a traffic stop. My only

recollection comes from my written reports, my Canine Contact Sheets, and Canine Traffic Stop

Logs." Office Weir represents that typewritten copies of these logs were produced to Mr. Miller.

Officer Weir has specifically stated in his signed Interrogatories that he has no other independent

current recollection as to any information regarding the people that fall into the categories identified

by Mr. Miller in Interrogatories Nos. 1-6. As for the addresses, Officer Weir argues that any

information available to Officer Weir "regarding the addresses of these individuals is equally

available to [Mr. Miller] and has been provided to him." Def. Resp., p. 3.

     Given Officer Weir's signed statements regarding his recollection of prior incidents, the

Court finds that the *format* of Officer Weir's answers to Interrogatories Nos. 1-6 are sufficient and

that no further breakdown by interrogatory is necessary. Officer Weir has indicated by his sworn

answers that he has no independent recollection of the incidents other than the logs that would allow

him to answer the Interrogatories more specifically.

     However, as for the addresses, the Court is mystified as to Officer Weir's ongoing refusal

to comply with the initial discovery request and several Court Orders. The Court **GRANTS** the

Motion to Compel as to the request for addresses, **REAFFIRMS** the Court's November 22, 2010

Order, and hereby **ORDERS** that Officer Weir serve Mr. Miller with the amended Interrogatory

Answers that include the last known address, as found in the police records, for each individual listed, on or before **May 20, 2011**.

4.      *Defendant Weir - Justice Department Documents*

Mr. Miller asks that Defendant Weir be ordered to immediately produce all documents that he and/or his attorney have received from the U.S. Justice Department concerning and/or relating to the criminal investigation that the Justice Department initiated against Office Weir, including cover sheets and all correspondence.  Mr. Miller reasons that over 75 days have passed since Office Weir purportedly authorized the release of the responsive documents from the Justice Department, which Mr. Miller reasons was sufficient time under the regulations for the Justice Department to send an acknowledgment letter and decide whether to grant the request, notifying Officer Weir in writing.  Defendant Weir represents that he will produce any documents he receives from the Justice Department; however, as of the date of his response, he had not received any documents from the Department of Justice and has no explanation for the delay.

On November 22, 2010, the Court ordered Officer Weir make a Privacy Act request for the investigation related to File Number DJ 144-26-810 (related to Russell Prosser) as well as for any other investigations that are responsive to Plaintiff's discovery request, on or before December 6, 2010, and to file a copy of the request with the Court.  On December 6, 2010, Officer Weir filed with the Court a copy of his request and authorization dated November 30, 2010.  The Court, at this time, **DENIES without prejudice** the motion as to this request and declines to order Officer Weir or his attorney to file any additional documentation regarding the request as proposed by Mr. Miller.

5.      *City of Plymouth - Videos*

Mr. Miller asks the Court to order the City of Plymouth to immediately produce all videos of traffic stops that Officer Weir maintains in his "private" collection based on testimony received in open court on December 16, 2010. The City of Plymouth responds that, on March 1, 2011, it informed Mr. Miller that the company that sold the police department the recording equipment estimates that the cost of a secure download of the 46 gigabytes of material on the hard drive of the camera in Officer Weir's vehicle would be $1771.71. In the letter, the City asked Mr. Miller to advise how he would like to proceed.

The Court understands Mr. Miller to be seeking the individual DVDs about which Officer Weir testified before this Court on December 16, 2010, and which he testified he keeps in his locker/drawer at the police station. The Court does not understand Mr. Miller to be asking for material to be downloaded from the hard drive in Officer Weir's vehicle. Accordingly, the Court **GRANTS** the motion as to this request and **ORDERS** the City to immediately copy and produce to Mr. Miller on or before **May 20, 2011**, any and all videos or DVD recordings of traffic stops in Officer Weir's possession, whether located in the Plymouth Police Department break room, in his locker, in his personal drawer at work, or otherwise maintained in a personal private video collection.

6.      *Outstanding Discovery*

Mr. Miller asks that the Plymouth Defendants be ordered to immediately produce all materials and documents that they had previously promised would be available during Mr. Miller's December 9, 2010 trip to Plymouth but that were not produced, including (1) transcripts or recordings of complainants' interviews, (2) photos of the dog's attack of Mr. Prosser, (3) installation

and maintenance records of the Plymouth Police Department's in-car audio/video recording devices, and (4) clear and legible copies of service/operation manuals for all models of in-car audio/video recording equipment installed in Officer Weir's vehicle since May 1, 2005.

In response, the City addresses only the interview tapes, noting that correspondence between the parties later in December informed Mr. Miller that copies of the interview tapes could either be made at his expense or he could make copies himself, as was previously articulated on December 9, 2010. Accordingly, the Court **ORDERS** that Mr. Miller may choose to have the copies made at his expense or make the copies himself. The Court **ORDERS** the parties to **CONFER** on or before **May 13, 2011**, to determine the nature of the production of the tapes. Should Mr. Miller choose to make the copies himself, the Court further **ORDERS** the City to provide Mr. Miller at least 7 days prior to the scheduled date for making the copies with all necessary information to allow him to efficiently make the copies on the prearranged date. The Court **ORDERS** that the production of the tapes, regardless of the method, shall be completed by **June 17, 2011**.

The City does not respond to the remaining relief sought by Mr. Miller, deny that the discovery was not produced, or explain why the ordered discovery was not produced. Accordingly, the Court **GRANTS** the motion as to this outstanding discovery, with the exception of the recordings discussed in the prior paragraph, and **ORDERS** that the Plymouth Defendants produce to Mr. Miller the outstanding discovery sought, including (1) color photos of the dog's attack of Mr. Prosser, (2) installation and maintenance records of the Plymouth Police Department's in-car audio/video recording devices, and (3) clear and legible copies of service/operation manuals for all models of in-car audio/video recording equipment installed in Officer Weir's vehicle since May 1, 2005, on or before **May 20, 2010**.

### C.  Plaintiff Jamila D. Miller's Motion to Compel the Plymouth Defendants' Compliance in Discovery (Fifth Motion to Compel)

Mrs. Miller asks the Court, pursuant to Federal Rule of Civil Procedure 37(a), to order Defendant John Weir to respond immediately and fully to Interrogatories Nos. 1, 3, 4, 6, and 7 and Requests for Production Nos. 1-4, 6, and 7.  Similarly, Mrs. Miller asks the Court to order Defendant City of Plymouth to respond immediately and fully to Interrogatories Nos. 4, 6, and 7 and Requests for Production Nos. 2, 6, and 7.

### 1.    *Interrogatory No. 1 Propounded Upon Officer Weir*

In Interrogatory No. 1, Mrs. Miller asks Officer Weir to identify by name the person referred to as "another Black guy" in the video recording of the Plaintiffs' traffic stop and to provide the person's last known address.  In a supplemental answer to Interrogatory No. 1, at docket entry 298, Officer Weir provided the individual's name but did not provide his address.  Mrs. Miller continues to seek the individual's address.  Defendant responds that he provided the name of the individual and that any further information known about the individual is contained in Case Report 11052170, which is available.  Interrogatory No. 1 specifically requests the name and address of the individual. To the extent the last known address of the individual now identified by Officer Weir is located within Case Report 11052170 or any other police record of the incident, the Court **GRANTS** the motion as to Interrogatory No.1 and **ORDERS** Officer Weir to file a second supplemental Interrogatory response providing the last-known address of the identified individual on or before **May 20, 2011**.

*2.     Interrogatory No. 3 Propounded Upon Officer Weir*

Interrogatory No. 3 asks Officer Weir to identify certain law enforcement officers who had requested that Officer Weir conduct canine sniffs of vehicles the officers had detained for alleged traffic violations, asking Officer Weir to identify the officers by name and agency. Officer Weir identified the officers but did not identify the agency to which each officer was attached. In response, Officer Weir suggests that Plaintiffs can deduce from the rosters of all City of Plymouth officers and of all Marshall County officers to which agency each officer belongs. However, Officer Weir agrees to provide the agencies of the non-Plymouth and non-Marshall County law enforcement persons. Accordingly, the Court **GRANTS in part** and **DENIES in part** the motion as to this request, ordering Officer Weir to provide an amended answer to Interrogatory No. 3 that identifies the agency for each non-Plymouth and non-Marshall County officer on or before **May 20, 2011**.

*3.     Interrogatory Nos. 4 and 6 Propounded Upon Officer Weir;*
       *Interrogatory Nos. 4 and 6 Propounded Upon the City*

In Interrogatory No. 4, Mrs. Miller asked Officer Weir to identify all non-defendant persons who may provide affidavit testimony to support any summary judgment motion Officer Weir may file in this case, and in Interrogatory No. 6, Mrs. Miller asked Officer Weir to identify the documents that Officer Weir intends to use in support of or in opposition to a motion for summary judgment, if such documents have not yet been disclosed. The same queries were made of the City. Defendants objected to these requests as premature. In response to the instant motion, Defendants essentially argue that they cannot predict at this time what documents or affidavits will be used to either oppose a summary judgment motion or to support a summary judgment motion.

While Rule 26(a)(1) requires parties to disclose information and materials used to support their claims or defenses, it does not require them to specifically identify through discovery which

of the disclosed documents will be relied on during summary judgment. In this context, the Court does not understand Defendants to be withholding relevant, discoverable material or to be withholding material that must be disclosed under Rule 26(a) or Rule 26(e); rather, the Court understands that Defendants do not yet know which documents or affidavits will be used. The Court is not precluding a motion or a ruling at a later date should information not disclosed during the course of discovery or in a timely manner be offered in support of summary judgment. The Court finds that this request is premature and **DENIES** the motion as to these Interrogatories.

4.    *Interrogatory No. 7 Propounded Upon Weir*
      *Interrogatory No. 7 Propounded Upon the City*

Mrs. Miller asks Officer Weir and the City to identify yet undisclosed documents that may be introduced at trial. In response, Officer Weir and the City answered, "None at this time." Defendants respond that, at this time, Defendants are not aware of any such documents. They have indicated that they will be mindful of the existence of Interrogatory No. 7, and that, as documents are created, revealed, or obtained and determined that they will be presented at trial, their existence will be made known to Plaintiffs through supplemental responses. As in the prior section, in this context the Court does not understand Defendants to be withholding discoverable material but rather that there are not currently any yet undisclosed documents that should have already been produced. The Court denies as premature Mrs. Miller's request that the Court now order that undisclosed documents that predate this Order be barred from use at trial; a determination of the admissibility of evidence will be made at trial or shortly in advance of trial through motions in limine. The Court **DENIES** the motion as to these Interrogatories.

5.    *Request for Production No. 1 Propounded Upon Officer Weir*

In this request, Mrs. Miller asks Officer Weir to produce all documents, including case/incident reports and audio/video recordings, concerning and/or relating to the traffic stop involving "another black guy," identified in Officer Weir's supplemental response to Interrogatory No. 1.  In response, Officer Weir indicated that he would produce the responsive Case Report "upon appointment scheduled with Defendants' counsel at the Plymouth Police Department."  In his response brief, Officer Weir argues that, if there are other documents Mrs. Miller wishes to view in this case, it is contemplated by the Rules that he make those documents available for Mrs. Miller's review.  However, if this one document is the only document she seeks, Officer Weir has offered to produce this one document directly to her.

Because there are numerous other documents of which Mrs. Miller seeks production, the most efficient way for her to inspect and, if she chooses, copy the documents is for her to view and inspect them all at a scheduled appointment with Defendants' counsel at the Plymouth Police Department.  Federal Rule of Civil Procedure 34 provides that "[a] party may serve on any other party a request within the scope of Rule 26(b) . . . to produce and permit the requesting party . . . to inspect, copy, test, or sample . . . any designated documents or electronically stored information . . . ." Fed. R. Civ. P. 34(a)(1)(A).  The Court **GRANTS** the motion as to this request and **ORDERS** that the parties confer prior to **May 13, 2011**, to identify a date and time for the inspection.

6.    *Request for Production No. 2 Propounded Upon Officer Weir;*
      *Request for Production No. 2 Propounded Upon the City*

In these requests, Mrs. Miller asks for the production of all documents, including case/incident reports and audio/video recordings, concerning and/or relating to Officer Weir's stop, canine sniff, and search of Jamie Howell, an individual who was riding a bicycle on November 28,

26

2010.  Defendants responded that they would produce the requested material "upon appointment scheduled with Defendants' counsel at the Plymouth Police Department."  Apparently the case report has already been inadvertently produced in a batch of case reports recently released.  In response to the motion, Defendants indicate that they have identified an online newspaper article through a Google search and will produce it to Mrs. Miller.  To the extent that any additional documents *or* videos regarding the Jamie Howell incident are in the possession or control of Officer Weir or the City of Plymouth, the Court **GRANTS** the motion as to this request and **ORDERS** that the documents, videos, or other materials be made available to Mrs. Miller for her inspection.  The Court **ORDERS** that the parties confer prior to **May 13, 2011**, to identify a date and time for the inspection.

7.      *Requests for Production Nos. 3 and 4 Propounded Upon Weir*

Previously, Kevin Miller requested information and materials concerning and/or relating to traffics stops Officer Weir initiated or participated in since January 1, 2004; however, Officer Weir produced "Traffic Stop Logs" for the period of January 2007 through September 2009. Subsequently, in Request for Production No. 3, Mrs. Miller asked Officer Weir to produce "traffic stop log" for the period of January 1, 2004, to December 31, 2006, and October 1, 2009, to the present.  Similarly, in Request for Production No. 4, Mrs. Miller asked Officer Weir to produce "Canine Case Summaries" for the period of May 1, 2005, to April 30, 2007, because he had previously only produced the summaries to Kevin Miller for the period of May 2007 through October 2009.  In response, Officer Weir responded that he would produce the documents "upon appointment scheduled with Defendants' counsel at the Plymouth Police Department."  The Court **GRANTS** the motion as to this discovery and **ORDERS** that the Traffic Stop Logs and the Canine

Case Summaries for the requested periods of time be made available to Mrs. Miller for her inspection and copying. The Court **ORDERS** that the parties confer prior to **May 13, 2011**, to identify a date and time for the inspection.

8. *Request for Production No. 6 Propounded Upon Officer Weir;*
   *Request for Production No. 6 Propounded Upon the City*

In these requests, Mrs. Miller asks for the production of documents, correspondence, and e-mails provided by non-defendants to this lawsuit. Both Officer Weir and the City object on the basis that the request asks for documents, including letters between counsel and non-parties to this lawsuit, that fall under the work product privilege. No privilege log was provided as required by Rule 26(b)(5). Mrs. Miller argues that, by failing to provide a privilege log, the Plymouth Defendants have rendered it impossible for Mrs. Miller to assess the legitimacy of the claimed privilege. Mrs. Miller asks that the Court find the objection waived and order the production of the documents; in the alternative, Mrs. Miller asks that Defendants be ordered to serve and file a privilege log, prepared in accordance with Rule 26(b)(5)(A)(ii) and the case law in the Seventh Circuit Court of Appeals, including the author, all recipients and their capacities, the names of anyone else with access to the document, the document's date, the nature of the claimed privilege with a specific explanation of why the document is privileged, and a brief summary of the document's subject matter.

In response to the motion, Defendants respond that, without waiving their objections, the only non-parties that they have discussed any aspect of this case with are the employees of Vohne Liche Kennels and that the only privileged material involving this case has been correspondence regarding Vohne Liche Kennels' sale and training of the canine Rex. Defendants argue that the failure to produce a privilege log as to this particular request constitutes harmless error because

Kevin Miller has already conducted an on-scene inspection of records at Vohne Liche Kennels and individuals at Vohne Liche Kennels have been identified to Mr. Miller in responses to his requests to produce and interrogatories. Defendants represent that no further description of the documents is available.

The Court **GRANTS** the motion as to Request for Production No. 6 and **ORDERS** the Plymouth Defendants to provide a full response, including a proper privilege log, if appropriate, on or before **May 20, 2011**. The Court **GRANTS** Mrs. Miller leave to file an *amended* Motion to Compel as to both Requests for Production No. 6 *after* she has received the privilege log. The Court ORDERS that any amended Motion to Compel shall be filed on or before June 3, 2011, and must provide an individual argument for each document sought, and shall be briefed in accordance with Local Rule 7.1.

9.      *Request for Production No. 7 Propounded Upon Officer Weir;*
        *Request for Production No. 7 Propounded Upon the City*

In this Request for Production, Mrs. Miller requests that Office Weir produce all yet undisclosed documents that Officer Weir intends to use in support of a motion for summary judgment. Defendants responded, objecting that the request was premature because they had not yet contemplated a motion for summary judgment but that Defendants would supplement their response as needed. As with the previously discussed similar interrogatories, in this context the Court does not understand Defendants to be withholding relevant, discoverable material or to be withholding material that should have been disclosed under Rule 26(a); rather, the Court understands that Defendants do not yet know which documents will be used. The Court finds that this request is premature and **DENIES** the motion as to these Requests.

10.     *Signatures*

Mrs. Miller also asks the Court to strike Defendants' discovery responses at docket entries 314, 315, 316, and 318 unless counsel for Defendants signs the discovery responses within five days of her motion, which would have been March 7, 2010. The Court's review of these filings shows that docket entries 314 and 315 contain the electronic signature of the Plymouth Defendants' attorney but that the objections in the answers to Interrogatories at docket entries 316 and 318 are not signed by an attorney. Defendants do not respond to this aspect of the motion.

Federal Rule of Civil Procedure 33(b)(5) requires that "[t]he person who makes the answers must sign them, and the attorney who objects must sign any objections." Fed. R. Civ. P. 33(b)(5). The Court **GRANTS** the motion as to docket entries 316 and 318 and **DENIES** the motion as to docket entries 314 and 315. The Court **ORDERS** the City and Officer Weir to **FILE** amended answers to Interrogatories (currently at docket entries 316 and 318) containing an attorney's signature for each objection, on or before **May 20, 2011**.

## CONCLUSION

Based on the foregoing, the Court hereby:

(1) **DENIES** Plaintiffs' Joint Motion to Strike the Plymouth Defendants' Discovery Responses at Docket Nos. 258 and 259 [DE 320];

(2) **GRANTS in part** and **DENIES in part** Plaintiff Kevin D. Miller's Fourth Motion to Compel Discovery Responses from Defendants City of Plymouth and John Weir [DE 321] consistent with this Order; and

(3) **GRANTS in part** and **DENIES in part** Plaintiff Jamila D. Miller's Motion to Compel the Plymouth Defendants' Compliance in Discovery (Fifth Motion to Compel) [DE 325] consistent with this Order.

SO ORDERED this 5th day of May, 2011.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record
        Pro se Plaintiffs