United States District Court
Northern District of Indiana
Hammond Division

KEVIN D. MILLER and
JAMILA D. MILLER,

    Plaintiffs,

v.

CITY OF PLYMOUTH;

JOHN WEIR, in his individual capacity and
official capacity as an employee or agent
of the City of Plymouth and/or the Plymouth
Police Department;

MARSHALL COUNTY SHERIFF'S
DEPARTMENT;

NICHOLAS LAFFOON, in his individual
capacity and official capacity as an employee
or agent of Marshall County and/or the
Marshall County Sheriff's Department; and

BRUCE CARTER, in his individual
capacity and official capacity as an
employee or agent of Marshall County
and/or the Marshall County Sheriff's
Department,

    Defendants.

Case No. 2:09-CV-205-JVB

**OPINION AND ORDER**

**A.    Background**

    On July 22, 2009, Plaintiffs Kevin and Jamila Miller sued pursuant to 42 U.S.C. § 1983 the City of Plymouth, Indiana, and its police officer John Weir; as well as Marshall County Sheriff's Department and its police officers Nicholas Laffoon and Bruce Carter. They allege,

among other things, that Defendants violated Plaintiffs' Fourth Amendment, First Amendment, and Fourteenth Amendment rights arising out of a traffic stop. Plaintiffs also bring a number of state law claims arising out of the same incident, including false imprisonment, intrusion upon seclusion, assault and battery, intentional infliction of emotional distress, and negligent infliction of emotional distress.

On February 29, 2012, Defendants City of Plymouth and John Weir moved for summary judgment arguing that Plaintiffs have no valid federal claim against the individual defendants and that the Indiana Tort Claims Act bars any additional state law claims. (DE 567). On March 1, 2012, Defendants Marshall County Sheriff's Department, Nicholas Laffoon, and Bruce Carter also moved for summary judgment on all claims. (DE 572). On March 5, 2012, Plaintiffs filed a cross-motion for summary judgment arguing that their car was searched without probable cause in violation of the Fourth Amendment. (DE 577).

For the following reasons, the Court grants in part and denies in part Defendants Marshall County Sheriff's Department, Nicholas Laffoon and Bruce Carter's motion for summary judgment and grants in part and denies in part Defendants City of Plymouth and John Weir's motion for summary judgment. The Court denies Plaintiffs' motion for summary judgment.

B. **Cross-Motion for Summary Judgment Standard**

Summary judgment is only appropriate by the terms of Rule 56(c) where there exists "no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56. This notion applies equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir. 1996). Indeed, the existence of cross-motions for summary judgment does not

necessarily mean that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., Inc. v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003). Rather, the process of taking the facts in the light most favorable to the nonmovant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id*. at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Ins.*, 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)). Mindful of these standards, the court now turns to the factual basis for the parties' motions and then to their substance.

**C. Motions to Strike**

Defendants City of Plymouth and John Weir filed eight motions to strike various Plaintiffs' exhibits, excerpts from Plaintiffs' motion for summary judgment, and Plaintiffs' affidavits. Plaintiffs also filed a motion to strike. They want to strike the Plymouth Defendants' factual assertions in the motion for summary judgment that they believe are not supported by admissible evidence.

While some of the assertions on both sides have merit, many of them are nitpicky. To address them all in detail would waste the Court's time. Instead, mindful of the summary judgment standard and the Federal Rules of Evidence, the Court will set forth the facts that are relevant to the parties' motions for summary judgment.

### D. Material Facts

On Wednesday, May 14, 2008, Plaintiffs Kevin and Jamila Miller were traveling east on U.S. 30 from Gary to Fort Wayne. Deputy Sheriff Nicholas Laffoon was driving west on U.S. 30 when he saw the Miller's car, which appeared to be exceeding the posted 60 mph speed limit. Laffoon cut through the grass median of U.S. 30 turning east to catch up with the car. A short time later, he pulled the car over at a red traffic light at the intersection of U.S. 30 and Oak Road. K-9 Officer John Weir of the Plymouth Police Department had just concluded a different traffic stop at the same intersection and pulled up his marked squad car behind Laffoon's. Officers Laffoon and Weir both got out of their squad cars and approached the Millers' car with Laffoon on the driver side and Weir on the passenger side. Officer Laffoon informed Mr. Miller that he stopped him for speeding. Mr. Miller gave Laffoon his driver's license, vehicle registration, and then requested to see the radar displaying his speed. Laffoon and Weir walked to the back of the Millers' car, consulted each other, and returned to their squad cars.

While Laffoon was in his patrol car writing Mr. Miller a citation for speeding, Weir deployed his police dog, Rex, and walked it around the Millers' car. As Weir approached the rear passenger side, Mr. Miller rolled down the window and told Weir that he did not have a right to search his car. Weir responded that the dog alerted at the right rear of the Millers' car and again at the passenger door. Mr. Miller contends that he heard Weir attempting to cue the dog to alert by repeatedly commanding the dog to "sit" as he walked along the passenger side of Plaintiff's car. Additionally, Mr. Miller alleges that Weir indicated that he "wanted to find drugs" in Plaintiffs' car. (Pl.'s Br. at 3).

Following the dog's alerts, Weir instructed Mr. Miller to get out of the car. Mr. Miller continued to object to Weir's conduct. Eventually, Weir instructed Mr. Miller to stand behind

4

the Millers' car. After Mr. Miller got out of the car, Weir opened the front driver's side door and prompted Rex to get in the car while Mrs. Miller was still in the passenger seat. Both Mr. and Mrs. Miller objected to Weir's use of the dog to search the car.

After searching the car, Weir returned his dog to his squad car, approached Mr. Miller from behind, and handcuffed him. When Mr. Miller asked if he was under arrest, Weir responded that he was not under arrest but was being restrained for his own safety and told Mr. Miller to remain standing in front of his car and out of the roadway. Mrs. Miller remained in the car. Weir spoke with Laffoon and told him that the dog had alerted for drugs.

At this time, Sargent Bruce Carter of the Marshall County Sheriff's Department came in response to Laffoon's call for backup. Carter asked Laffoon what was happening and Laffoon explained the situation to him. During this time, Weir instructed Mrs. Miller to come out of the car but she refused. Carter then walked over to the side of the car and asked Weir if he needed her out of the car. Mrs. Miller refused to leave the car until Mr. Miller yelled at her. Once she was out of the car, Weir took hold of her jacket by the lapel, pulled it open and looked inside. Weir and Laffoon then searched the Millers' car. During the search, Carter remained with the Millers. Weir and Laffoon did not find any contraband. At one point, Carter asked Mr. Miller if he had calmed down enough for the handcuffs to be removed. Mr. Miller told him to leave the handcuffs on because it would be better for his case.

By the time the search was completed, there were several police officers on the scene. Laffoon felt that the situation was safe and removed the handcuffs from Mr. Miller. Laffoon returned to his squad car to finish the traffic citation for Mr. Miller. After the citation was complete, Laffoon returned Mr. Miller's license and registration to him, presented him with the

citation and explained it to him. At that time, the Millers were free to leave. The entire traffic stop lasted about thirty-five minutes.

During the trial on the traffic charge, which resulted from this stop, the state court convicted Mr. Miller of speeding.


**E.      Discussion**

**(1)    *Federal Claims*[1]**

Pursuant to 42 U.S.C. § 1983, Plaintiffs allege violations of their rights guaranteed by the Fourth Amendment. Section 1983 provides "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterrey v. Del Monte Dunes at Monterrey, Ltd.*, 526 U.S. 687, 749 n.9 (1999). A cause of action may be brought under § 1983 against "[e]very person who, under color of statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction therefor to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

The plaintiff must demonstrate that the defendant personally participated in or directly caused the deprivation of his or her rights. *Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003). The doctrine of respondeat superior cannot be used under § 1983 to create supervisors' liability due to the misconduct of subordinates. *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir.

---

[1] Plaintiffs have conceded that they will not pursue a Fourth Amendment claim against Officer Laffoon arising from the initial traffic stop; that they will not pursue a Fourth Amendment claim against Officer Laffoon arising from Weir's conduct of allowing Rex to sniff Plaintiffs' car; that they will not pursue a Fourth Amendment claim against Officer Laffoon for physically searching Plaintiff's car; that they will not pursue a failure to intervene claim against Officers Laffoon or Carter for failing to prevent Officer Weir from violating Plaintiffs' rights; that they will not pursue *Monell* claims against the Marshall County Sheriff's Department for Laffoon's or Carter's violations; that they will not pursue a false imprisonment claim, an intrusion upon seclusion claim, or an intentional or negligent infliction of emotional distress claim against the Marshall County Sheriff's Department; that they will not pursue a Fourteenth Amendment claim against Laffoon or Carter; and that they will not pursue any state law claim against Laffoon or Carter in their individual capacities.

2001). Instead, the plaintiff must demonstrate that the defendant was personally responsible by "act[ing] or fail[ing] to act with a deliberate or reckless disregard of plaintiff's constitutional rights," or that "the conduct causing the constitutional deprivation occur[red] at [the defendant's] direction or with [the defendant's] knowledge or consent." *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982).

Qualified immunity, a primary defense to a claim under § 1983, shields officers from liability when they are performing discretionary functions . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[T]he inquiry focuses on the objective legal reasonableness of the action, not the state of mind or good faith of the officials in question. *Delaney v. DeTella*, 256 F.3d 679, 686 (7th Cir. 2001). Qualified immunity provides "protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "To be clearly established, a right must be sufficiently clear 'that every "reasonable official would [have understood] that what he is doing violates that right."' In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Reichle v. Howards*, 132 S. Ct. 2088, 2093, (2012) (citations omitted). "[P]laintiff bears the burden of showing the existence of the allegedly clearly established constitutional rights." *Clash v. Beatty*, 77 F.3d 1045. 1047 (7th Cir. 1996). Police have qualified immunity for actions taken during arrest if their conduct does not violate statutory or constitutional safeguards that a reasonable person would know, and their conduct is not so egregious no reasonable person could believe it did not violate clearly established rights. *Smith v. City of Chi.*, 242 F.3d 737, 742 (7th Cir. 2001). A plaintiff can overcome qualified immunity by showing a clearly analogous case establishing a right to be free from the specific conduct, or

7

by showing that no reasonable person would believe the conduct did not violate a protected right. *Id.*

"[C]ourts may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all. This approach comports with our usual reluctance to decide constitutional questions unnecessarily." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (citations omitted).

(a) Fourth Amendment

Plaintiffs first argue that Officer Weir violated their Fourth Amendment rights to be free from unreasonable seizure. Plaintiffs argue that Officer Weir violated their rights by detaining them at an illegal drug-interdiction checkpoint. Defendants respond that Plaintiffs have already been found guilty of speeding for this incident in a prior state case and that, as a result, Plaintiffs' claim that their stop was illegal is prohibited by *Heck v. Humphrey*, 512 U.S. 477 (1994). In addition, Officer Weir invokes qualified immunity as to this and all other of the Plaintiffs' claims.

It is well-settled that *Heck v. Humphrey* bars a plaintiff from maintaining a § 1983 action where a judgment in favor of the plaintiff would necessarily imply that his conviction was invalid. *Id.* at 486–87. Additionally, the usual rule is that merits of a legal claim already decided in a court of competent jurisdiction are not subject to redetermination in another forum. *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 485 (1982). State court judgments must be given the same full faith and credit that they have in the state court. 28 U.S.C. § 1738; *Allen v. McCurry*, 449 U.S. 90 (1980). In this case, because Mr. Miller had the opportunity to litigate the issue as to

whether there was probable cause to stop him for speeding, this Court will not re-examine the state court's determination. As a result, the Courts grants summary judgment in favor of Defendants as to the issue of whether Officers Laffoon and Weir violated Plaintiffs' rights by stopping them in Plymouth.

Plaintiffs next argue that Defendants Laffoon and Weir violated Plaintiffs' Fourth Amendment rights to be free from unreasonable searches and seizures. Specifically, Plaintiffs assert that their Fourth Amendment rights were violated when Defendants Laffoon and Weir detained Plaintiffs beyond the time necessary to issue a traffic citation, when Weir prompted the dog to sniff Mr. Miller's person, when Weir physically searched Mr. Miller, and when Weir searched Mrs. Miller's person. Plaintiffs also insist that Defendant Weir used excessive force when conducting the search with use of the police dog, Rex.

Because Officer Weir invoked the defense of qualified immunity, Plaintiffs must show that Officer Weir violated a clearly established right.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In *Carroll v. United States*, 267 U.S. 132, 153–56 (1925), the Supreme Court recognized the "moving vehicle" exception to the warrant requirements of the Fourth Amendment. Under *Carroll*, a vehicle may be searched without a warrant if there is probable cause to believe the car contains contraband or evidence of a crime. *California v. Acevedo*, 500 U.S. 565, 569 (1991). Further, the law is clear that the use of a canine to sniff around the exterior of a vehicle during a lawful traffic stop does not rise to the level of a cognizable infringement on the motorist's Fourth Amendment rights. *Illinois v. Caballes*, 543 U.S. at 409. Generally, an alert by a police dog will give police officers probable cause to search a vehicle. *Caballes*, 543 U.S. at 407; *see also U.S.*

*v. Martin,* 422 F.3d 597 (7th Cir. 2005) (holding that free air sniff by drug detection canine provided probable cause for search).

However, there is a material dispute as to whether Defendant Weir had probable cause to search the car or Plaintiffs' persons or to detain them. Therefore, the Court cannot resolve the question of qualified immunity at this time. Although an alert by a narcotic-detection dog is enough to provide probable cause to search a car, the alerting dog must be reliable. Moreover, the alert must come from the dog detecting the drugs, not from the handler cuing the dog to alert. In this case, Plaintiffs contend that Officer Weir cued the dog to alert by repeatedly commanding the dog to sit as he walked along the car. Defendants contest that Officer Weir did not prompt Rex to alert and instead provide statistics as to Rex's reliability. Because there is a genuine dispute as to the reliability of Rex's alert, the cross-motions for summary judgment are denied on the issues of search the car, the Millers, and the seizure of Millers.

However, the Court grants summary judgment for Defendants on Plaintiffs' claim that Rex's sniffing inside the car with Mrs. Miller present constituted the use of excessive force. Plaintiffs submitted evidence that Rex is trained to bite and hold suspects. Moreover, the evidence suggests that his presence in the car was intimidating and even scary. However, there is no evidence that Rex physically harmed Mrs. Miller. A dog's ability to bite and hold is not sufficient to make its release, alone, an act of excessive force. If that were the case, every time a police dog is release, its handler would be guilty of using excessive force. *See Thomson v. Salt Lake County*, 584 F.3d 1304, 1315 (10th Cir. 2009) (declining "to deem a police dog's ability to bite and hold to be sufficient to make Chaos's release, alone, an act of deadly force").

(b) First Amendment

In Count II of their Complaint, Plaintiffs allege that Defendant Carter violated Plaintiff's First Amendment right to free speech by refusing to release Mr. Miller from handcuffs because Mr. Miller objected to Officer Weir's conduct. Defendant Carter asserts that Plaintiffs cannot show that the failure to remove the handcuffs was motivated by Mr. Miller's speech. Instead, Defendant Carter argues that he offered to remove the handcuffs and Mr. Miller refused the offer. Additionally, Defendant Carter claims that the offer to remove Mr. Miller's handcuffs was conditioned upon Mr. Miller's assurance that he was calm enough to have the handcuffs removed. All officers invoke the defense of qualified immunity.

A citizen who is stopped by a police officer for a violation of a speeding ordinance or statute may exercise the right of free speech under the First Amendment by inquiring as to the basis for the alleged offense. *Bovey v. City of Lafayette*, 586 F. Supp. 1460, 1468 (N.D. Ind. 1984). To sustain a claim under the First Amendment, Mr. Miller must show that he engaged in protected speech and that said speech was a substantial or motivating factor in the alleged retaliatory action of the defendant. *Morfin v. City of East Chi.*, 349 F.3d 989, 1005 (7th Cir. 2003). In this case, Plaintiffs' First Amendment claim is intertwined with their Fourth Amendment claim. There is a genuine material dispute as to the reason why Mr. Miller was handcuffed. If, on the one hand, he was handcuffed as a precaution during the lawful search of the car, then Plaintiffs' First Amendment claim would fail, as would their Fourth Amendment claim.[2] If, on the other hand, Officer Weir did not have probable cause to search the car, then Mr.

---

[2] In *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012), the Supreme Court held that Secret Service officers were protected by qualified immunity against plaintiff's claim that they arrested him in retaliation for his speech because the arrest was otherwise supported by probable cause. The Court noted that it had never held that there was a specific right to be free from a retaliatory arrest irrespective of probable cause." *Id.* at 2094. Accordingly, if Defendants prevail at trial on

11

Miller may be able to present enough evidence to allow a jury to find that he was handcuffed in retaliation for his speech. As a result, the Court denies the cross-motions for summary judgment as to this issue.

(c)     Fourteenth Amendment

In Count III of their Complaint, Plaintiffs allege that Defendant Weir violated their Fourteenth Amendment right to equal protection. Plaintiffs argue that Officer Weir treated Plaintiffs, who are African-Americans, differently than similarly situated white motorists. Equal protection guarantees all citizens "fair treatment in the exercise of fundamental rights or the elimination of distinctions based on impermissible criteria." John E. Nowak & Ronald D. Rotunda, Constitutional Law 595 (5th ed. 1995). Equal protection claims arise when "(1) the plaintiff[s] allege[ ] that [they] ha[ve] been intentionally treated differently from others similarly situated and (2) that there is no rational basis for the difference in treatment or the cause of the differential treatment is totally illegitimate animus toward the plaintiff by the defendants." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). Equal protection claims require proof that similarly situated individuals "who were not members of the protected class" were treated more favorably in order to establish discriminatory intent. *Lucas v. Chi. Transit Authority*, 367 F.3d 714, 732 (7th Cir. 2004). The constitution is not violated where a person simply is treated unfairly as an individual. *Travtvetter v. Quick*, 916 F.2d 1140, 1149 (7th Cir.1990).

In this case, Plaintiffs offer no evidence that they have been treated differently than any other similarly situated individuals who were not members of the protected class. As a result, the

---

the issue of probable cause, they will also prevail on the First Amendment issue as a matter of law.

Court: grants Defendant Laffoon and Defendant Carter's motion for summary judgment as to Plaintiffs' Fourteenth Amendment claims; grants Defendant Weir's motion for summary judgment as to Plaintiffs' Fourteenth Amendment claims; and denies Plaintiffs' motion for summary judgment.

d.  Claims Against the City of Plymouth

Counts IV, V, and VI of Plaintiffs' Complaint allege that the City may be held liable for violating Plaintiffs' First and Fourth Amendment Claims under § 1983 on a failure to train theory of liability.[3]

A municipality can be liable under § 1983 only if the municipality itself, through policy or custom deprives someone of their constitutional rights. In other words, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government is responsible under § 1983." *Monell v. Dep't of Soc. Services of City of N.Y.*, 436 U.S. 658, 694 (1978). A municipality will only be held liable when its official policy or practice causes a constitutional violation. *Hirsch v. Burke*, 40 F.3d 900, 904 (7th Cir. 1994). Accordingly, a plaintiff must show at least one of three things:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Phelan v. Cook Cnty.*, 463 F.3d 773, 789 (7th Cir. 2006). With regard to inadequate training, the court in *Canton* stated the rule that claims of municipal liability under § 1983 based on

---

[3]Plaintiffs also allege that the City is liable under the Fourteenth Amendment, but a City cannot be liable where there is no underlying liability in the first place.

13

inadequate training "can only yield liability against a municipality where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *City of Canton v. Harris*, 489 U.S. 378, 392 (1989).

In this case, Plaintiffs do not argue that an express policy exists for the City of Plymouth, which caused their constitutional deprivation of their First or Fourth Amendment rights. Nor have they alleged that a person with final policymaking authority participated in the alleged violations of their constitutional rights. Indeed, discovery produced by the Defendants, which is uncontested by the Plaintiffs, disclosed that the Plymouth Police Department follows the state-mandated guidelines for minimum training. Plaintiffs have not presented any evidence that would suggest that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights" that the City of Plymouth could reasonably be said to have been deliberately indifferent to the need. *See City of Canton v. Harris*, 489 U.S. 378, 390 (1989). As a result, Defendant City of Plymouth's motion for summary judgment as to this claim is granted and Plaintiffs' motion for summary judgment on this issue is denied.

**(2)** *State Claims*

a. False Imprisonment Claims

In Count VII of their Complaint, Plaintiffs allege that Officers Weir and Laffoon falsely imprisoned them. Plaintiffs allege that Defendants Weir and Laffoon falsely imprisoned them by detaining them beyond the time necessary to issue a traffic citation and by refusing to remove Mr. Miller's handcuffs. Defendants argue that because they are governmental employees acting within the scope of their authority, they are not liable under the Indiana Tort Claims Act.

Indiana law defines false imprisonment as the unlawful restraint upon one's freedom of movement or the deprivation of one's liberty without consent. *Row v. Holt*, 864 N.E.2d 1011, 1016 (Ind. 2007).

Under the Indiana Tort Claims Act, governmental employees acting within the scope of their authority are not liable if the loss results from the enforcement of the law, unless the act of enforcement constitutes false arrest or false imprisonment. Ind. Code § 34-13-3-3(8). In this case, if Plaintiffs cannot prove that there was an absence of probable cause for the search, then Plaintiffs' false imprisonment claim would fail. However, because a question of fact exists as to whether the Officers had probable cause to search the car, Plaintiffs' false imprisonment claims need to be decided by the jury. Consequently, the cross-motions for summary judgment as to this issue are denied.

(b)     Plaintiffs' Remaining State Law Claims

Plaintiffs bring a variety of additional state law claims in Counts VIII, IX, X, XI, and XII of their Complaint including: claims of intrusion upon seclusion, assault and battery, intentional infliction of emotional distress, and negligent infliction of emotional distress. However, under the Indiana Tort Claims Act, governmental employees acting within the scope of their authority are not liable if a loss results from their enforcement of the law, unless the act of enforcement constitutes false arrest or false imprisonment. Ind. Code § 4-13-3-3(8). Because Officers Weir and Laffoon were acting within the scope of their authority, they are not liable for any loss, if any, experienced by Plaintiffs. Consequently, Defendants' Motion for Summary Judgment as to Counts VII, IX, X, XI, and XII are granted.

**F.    Conclusion**

The Court---

- Grants in part and denies in part Defendants' motions for summary judgment (DE 567 & 572);

- Denies Plaintiff's motion for summary judgment (DE 577);

- Order the Clerk to term Plymouth Defendant's motions to strike (DE 602, 603, 604, 605, 606, 607, 610, & 635);

- Orders the Clerk to term Plaintiffs' motion to strike (DE 637).

In summary, only three of Plaintiffs' claims remain for trial: the allegedly illegal search and seizure of Plaintiffs' car and persons; the alleged retaliation for Plaintiffs' exercise of their First Amendment rights; and the state claim of false imprisonment.

SO ORDERED on August 15, 2012.

                                              S/ Joseph S. Van Bokkelen  
                                            JOSEPH S. VAN BOKKELEN  
                                            UNITED STATES DISTRICT JUDGE