United States District Court
Northern District of Indiana
Hammond Division

KEVIN D. MILLER and
JAMILA D. MILLER,

    Plaintiffs,

v.

CITY OF PLYMOUTH;

JOHN WEIR, in his individual capacity and
official capacity as an employee or agent
of the City of Plymouth and/or the Plymouth
Police Department;

MARSHALL COUNTY SHERIFF'S
DEPARTMENT;

NICHOLAS LAFFOON, in his individual
capacity and official capacity as an employee
or agent of Marshall County and/or the
Marshall County Sheriff's Department; and

BRUCE CARTER, in his individual
capacity and official capacity as an
employee or agent of Marshall County
and/or the Marshall County Sheriff's
Department,

    Defendants.

Case No. 2:09-CV-205-JVB

**OPINION AND ORDER**

    Consistent with the pretrial order, Plaintiffs disclosed the opinions of their expert witness, Steven D. Nicely. Mr. Nicely presents himself as "a police dog professional with over 30 years of experience in the police service dog field. During that time, he has served as a handler, trainer, instructor, evaluator, and consultant." (DE 500, Nicely's Op. at 4.) Defendants the City of

1

Plymouth and Officer John Weir (the "Plymouth Defendants") seek to bar him from testifying at trial. They believe that his opinions are nothing more than his subjective beliefs and speculation (DE 562-1, Plymouth Def.'s Br. at 11), and that his opinions are ludicrous, defying common sense, and not entitled to any weight. (DE 562-1, Plymouth Def.'s Br. at 16).

I.

There are two particular opinions in question: whether Officer Weir's police dog, Rex, was sufficiently trained to give rise to probable cause when he alerted for drugs in the Millers' car; and whether Officer Weir cued the dog to falsely alert. Mr. Nicely prepared two reports: one on August 16, 2011, and the other on August 26, 2001. In the conclusion of the first report, he states:

> The issues addressed by the Plaintiff from my point of view as a trainer and student of behavioral science are areas that increase non-productive responses and can in fact be reduced by proper training. At the time of this evidence relating to the dog team's training, testing, and field performance has not been provided and I have not reviewed. Review of evidence will help me determine the efficiency and accuracy of this team to assist those involved to make determinations as to the legal application of this team.

(DE 500, Nicely's First Report at 8.)

In essence, Mr. Nicely provided his opinions about police dogs generally and did not address the particular situations involving Rex. He explains what constitutes a well-trained dog and how it is able to discriminate certain stimuli and to alert its handler. Mr. Nicely further describes the need for real world training to reduce false alerts. Finally, he submits that a drug detection dog should be able to exhibit a single, identifiable behavior for alerting for the presence of narcotics as opposed to a range of behaviors, so as to allow the handler to conclusively know whether the dog is alerting.

Mr. Nicely's second report concludes that Rex and Officer Weir were both poorly trained:

> Based on the evidence provided it is my opinion that Officer Weir and K9 Rex were poorly trained. It is my opinion their poor training was the cause of the claimed response to Mr. Miller's vehicle.
>
> Due to the fact, the American Working Dog does not conduct realistic and discrimination testing they improperly convinced Officer Weir that K9 Rex was *well-trained* as defined by the United States Supreme Court. The American Dog certifying K9 Rex without realistic and discrimination opened the door for the occurrence of this lawsuit. Based on the information provided if I were Officer Weir's supervisor I would have required more detailed record keeping. I would have also required the certification to include realistic and discrimination testing to reduce the probability of non-productive responses, and protect Officer Weir and the Plymouth Police Department being accused of *deliberate indifference*.

(DE 500, Nicely's Second Report at 16.)

The body of the report purports to establish that the training techniques for Rex were deficient. Mr. Nicely also claims that Rex's job performance was only 19% percent reliable. Portions of Mr. Nicely's report are difficult to read, and he sprinkles it with excerpts from various cases that have little bearing on the facts at issue.

II.

The Plymouth Defendants seek to exclude Mr. Nicely's opinions in their entirety in accordance with Federal Rule of Evidence 702. For the most part, the motion will be granted.

Rule 702 sets the parameters of expert witness testimony:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

A major issue in this case is whether Rex's alert on Millers' car gave probable cause for Officer Weir to search the car. Mr. Nicely claims that Rex's alert was unreliable because Rex was not properly trained and because Officer Weir cued Rex into alerting, and therefore no probable cause could have been found on the basis of Rex' alert.

The Court of Appeals for the Seventh Circuit has long held that a search is supported by probable cause where the judge issuing a warrant was told that (1) the dog had graduated from training class and (2) had proven reliable in detecting drugs on prior occasions. *United States v. Klein*, 626 F.2d 22, 27 (7th Cir.1980). Therefore, for a probable cause determination to stand, the police officer must establish that the dog has been properly certified as a drug detection dog and that it was performing reliably in the field.

There is no question in this case that Rex was recertified just a few weeks before the search of the Millers' car. Mr. Nicely agrees with that; he just claims that the certification process was flawed. However, even if the process was flawed, Officer Weir would be protected by qualified immunity because under the existing Seventh Circuit law, no reasonable officer would have known, that the certification may not be relied upon. *See Hernandez v. Cook County Sheriff's Office*, 634 F.3d 906, 914 (7th Cir. 2011) ("[Q]ualified immunity protects government agents from liability when their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known.") (quotation marks omitted); *see Klein*, 626 F.2d at 27. Moreover, Mr. Nicely's own belief is that that the certifying body, the American Working Dog (Vohne Liche Kennels), "improperly convinced Officer Weir that K9 Rex was *well-trained* as defined by the United States Supreme Court," (DE 500, Nicely's Second Report at 16), not that Officer Weir had any reason to believe that Rex's

training was insufficient. Accordingly, Mr. Nicely's opinions as to Rex's training are irrelevant to this case and will not be admitted into evidence at trial.

Nor is Mr. Nicely's testimony required for determining if Rex was reliable at work. Mr. Nicely claims that Rex properly alerted for drugs only in 19% of all searches. He bases this conclusion on Officer Weir's records. The records are straightforward: they indicate that Rex alerted for drugs and state whether any drugs were found during a subsequent search. Hence, establishing Rex's success rate is a matter of elementary mathematics for which no expert is required.

However, the Court will allow Mr. Nicely to testify on the issue of whether Officer Weir cued Rex. Nonetheless, this testimony must be based on the facts of the case, not mere generalizations or speculation. The Plymouth Defendants' objection to Mr. Nicely testifying about whether Officer Weir cued Rex is based on the weight of the evidence, not Mr. Nicely's qualifications to testify on the subject matter. Accordingly, the objection is overruled.

**Conclusion**

The Court grants in part and denies in part the Plymouth Defendants' motion to exclude the testimony of Mr. Nicely from trial (DE 561).

SO ORDERED on September 29, 2012.

  S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE